Katha Lee Josephine WHITFIELD,
Appellant,

v.

The STATE of Texas, Appellee.

No. 45931.

Court of Criminal Appeals of Texas.

April 4, 1973.

Rehearing Denied April 25, 1973.

Allie L. Peyton, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Jack Bodiford, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a murder without malice conviction wherein the punishment was assessed by the jury at two years.

In her first two grounds of error, appellant contends the trial court erred in overruling her motion for an instructed verdict when the State rested its case in chief, and another such motion after both sides closed

"in that all of the evidence showed the defendant was acting in defense of her life." It is her contention that the evidence shows self-defense as a matter of law.

It is undisputed that appellant stabbed the deceased, Carl Eugene Caldwell, her brother-in-law, on May 31, 1970, in Harris County.

Deputy Sheriff J. E. Harrell testified that he went to the scene of the stabbing on the evening in question and, upon entering the house, he saw the deceased lying in the hallway in a large pool of blood. About this time, the appellant approached the officer and said, "I stabbed my brother-in-law," and handed the officer a small paring knife. She was then given a warning as to her rights and taken into custody.

The cause of death was established as a stab wound of the left chest which penetrated the right ventricle of the heart at a minimum depth of 3 to 3½ inches. The wound was consistent with a knife wound.

Bessie Brown, sister of the appellant and of Darlene Caldwell, wife of the deceased, testified for the State. On the Sunday in question, she was visiting in her parents' home in Fairbanks where the deceased and his wife lived. Murile Brown, one of her children, went across the street to appellant's home to play with his cousins. Later he was called by his mother to get ready for church, but by this time he had been asked to look after appellant's younger children while she cooked supper. A discussion later ensued between the witness Brown and the appellant and continued after they walked across the street to their parents' home and stood on the porch. Apparently, Darlene Caldwell, who was in a bedroom said, "I will take care of all the children because they are my nieces and nephews." When the appellant inquired what she said, Darlene answered, "Come and see," and the appellant went to the bedroom and was followed by the deceased, Carl Eugene Caldwell, who had been watching T.V. in the living room. Shortly thereafter, the witness Brown saw the de-

ceased stagger out of the bedroom into the hall and fall to the floor bleeding.

During the course of her testimony, Bessie Brown related that the appellant ran out of the bedroom crying and said, "I am sorry, I didn't intend to do that. I told him to get back and turn me loose. He was choking me."

■ The State claimed surprise and, in the jury's absence, laid a proper predicate for the possible impeachment as a result of a written statement given to officers shortly after the stabbing. The prosecutor also testified that despite his prior interview with the witness and while discussing her statement, she never told him of appellant's statement. Bessie Brown's written statement was admitted before the jury and it contained the affirmative declaration that "Carl had not done a thing. He was just standing there."[1]

Darlene Caldwell testified for the defense and related that she invited the appellant to the bedroom in order to repeat her remark about caring for the children; that the appellant entered the room and that she (the witness) also heard her husband, the deceased, enter but she kept folding a newspaper; that she heard the appellant say, "Get back and turn me loose," and when she looked up, she saw her husband bleeding. She further related the appellant said, "I am sorry, I didn't intend to do that but he was choking me," although she admitted she did not see her husband choking the appellant nor did she hear him say anything.

Testifying in her own behalf, the appellant stated that the deceased began choking her and that she grabbed a small paring knife there in the bedroom and stabbed him, but that she was acting in self-defense.

The court charged the jury on the right of self-defense.

■ We cannot agree that the court erred in overruling either motion for instructed verdict. At the time the first motion was overruled, the appellant had not testified she had acted in self-defense, was in fear of her life or serious bodily injury, etc. As to the second motion, we find the following statement from Parkman v. State, 149 Tex.Cr.R. 101, 191 S.W.2d 743 (1946), to be controlling:

"In making this contention (that self-defense had been establilshed as a matter of law), he recognizes the controlling rule to be that in order for a reviewing court to hold, as a matter of law, that a defendant in a homicide prosecution killed in self-defense, the evidence must be uncontradicted and no issue thereon presented for the jury's determination. Parker v. State, 138 Tex.Cr.R. 478, 136 S.W.2d 229; Patton v. State, 129 Tex. Cr.R. 269, 86 S.W.2d 774."

See also Escamilla v. State, 464 S.W.2d 840, 841 (Tex.Cr.App.1971); Garcia v. State, 454 S.W.2d 400, 406 (Tex.Cr.App. 1970).

■ In viewing the evidence, we do not conclude that evidence was uncontradicted and that self-defense was established as a matter of law.

■ Next, appellant complains that the cause of death was not proved by legal and competent evidence. She bases such claim on the fact that Dr. Jachimczyk, Medical Examiner of Harris County, testified, over objection, as to the cause of death from an autopsy report prepared by Dr. Ethel Erickson, who had, in fact, performed the autopsy. Dr. Jachimczyk testified that he had the care, custody, and control of all the records of the Medical Examiner's office; that the autopsy in question had been performed under his control and supervision by Dr. Erickson, an associate Medical

---

1. It must be borne in mind that impeaching evidence cannot be used as primary evidence and should be limited to the purpose for which it was admitted. See Wall v. State, 417 S.W.2d 59 (Tex.Cr. App.1967).

Examiner. This same question as to Dr. Jachimczyk's testimony was raised in Neely v. State, 409 S.W.2d 552 (Tex.Cr.App. 1966), and decided adversely to appellant's contention.

Further, in Viser v. State, 396 S.W.2d 867 (Tex.Cr.App.1965), and in Burrell v. State, 446 S.W.2d 323 (Tex.Cr.App.1969), an associate medical examiner, custodian of the records, was permitted to testify from the record of an autopsy prepared by another doctor—over the objection that the same was hearsay. In Mahaffey v. State, 471 S.W.2d 801 (Tex.Cr.App.1971), it was held that the medical examiner could testify from the autopsy report prepared by his predecessor. *Cf.* also Cuevas v. State, 456 S.W.2d 110 (Tex.Cr.App.1970).

We overrule appellant's contention. See Articles 3731a and 3737e, Vernon's Ann. Civ.St.

■ Appellant also contends the court erred in admitting the "hearsay" evidence of the results of the autopsy without the introduction of the autopsy report into evidence. She urges that she was never given an opportunity to examine the report and make timely objections to the same. The record reflects the contrary. The witness expressly stated he had the report with him from which he was testifying. There was no request to examine the same for the purpose of cross-examination and possible impeachment, and no objection was offered to the failure to introduce the report.

■ Further, we call attention to the fact that the medical examiner's records are public and were, thus, available to the appellant prior to trial. See Article 49.25, Vernon's Ann.C.C.P.; Mahaffey v. State, supra.

Appellant cites no authority for her contention and we overrule the same.

Finding no reversible error, the judgment is affirmed.