**Lucy Lucinda WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–00736–CR.**

Court of Appeals of Texas,
Dallas.

April 30, 1986.

Kerry P. Fitzgerald, Dallas, for appellant.

Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, for appellee.

Before VANCE, DEVANY and SCALES, JJ.

SCALES, Justice.

The appellant was found guilty of the offense of murder by the trial judge. Punishment was assessed at confinement in the Texas Department of Corrections for 9 years. The appellant contends that the evidence of self-defense entitles her to an acquittal as a matter of law. We disagree, and, consequently, we affirm the conviction.

A person is justified in using deadly force in self-defense against another when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. TEX.PENAL CODE ANN. § 9.32 (Vernon Supp.1986). Self-defense is a justification excluding criminal responsibility and, as such, is a defense under section 2.03 of the Penal Code. Under section 2.03, the defendant has the initial burden of producing evidence to raise a defense, but the State then has the burden of persuasion to disprove that defense beyond a reasonable doubt. *Luck v. State*, 588 S.W.2d 371, 375 (Tex.Crim.App.1979) (en banc), *cert. denied*, 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980). In order for the appellate court to hold that, as a matter of law, a defendant in a homicide prosecution killed in self-defense, the evidence must be uncontradicted and no issue presented for the factfinder's determination. *Whitfield v. State*, 492 S.W.2d 502, 504 (Tex.Crim. App.1973). The appellant's testimony alone, although uncontradicted, does not conclusively prove self-defense. *Cruz v. State*, 629 S.W.2d 852, 860 (Tex.App.— Corpus Christi 1982, pet. ref'd); *see Sebree v. State*, 695 S.W.2d 303, 305 (Tex.App.— Houston [1st Dist.] 1985, no pet.). In considering the record before us, we view the

evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McGoldrick v. State*, 682 S.W.2d 573, 577 (Tex.Crim.App. 1985); *Faggett v. State*, 673 S.W.2d 700, 702 (Tex.App.—Dallas 1984, pet. ref'd).

The record reflects that the deceased and the appellant were husband and wife. They were not living together at the time of the offense. Following a series of quarrels, the appellant stabbed her husband one time in the chest. The stabbing occurred at about 11:00 p.m. There were no witnesses to the stabbing, other than appellant. There was no evidence that the deceased had a weapon at the time.

Alice Boldon testified that she and the appellant were in appellant's house when the deceased began banging on the door and window to enter. Appellant asked Boldon to get a knife from the kitchen in order to secure the front door, because the door latch did not work. Boldon testified that they stuck a knife in the doorjamb to lock the door every night before they went to bed. Boldon gave the knife to her. Boldon stated that she was afraid both appellant and the deceased would "end up dead." Appellant told Boldon to go call the police, and Boldon was not present at the time of the stabbing a few minutes later.

Betty Washington testified that she lived next door to the appellant. She was out on her front porch, and she saw the deceased at the appellant's door. She stated that she could not see everything that was going on. She did not see anything in the deceased's hand. She heard appellant tell the deceased three times to get away from her door. The deceased continued "fumbling and beating at the door like he was trying to get in." Washington saw the appellant run out into the street after the stabbing. Appellant was naked.

Another witness, Margaret Ford, testified that she lived across the street from the house. She and her husband were outside on their porch. She saw the deceased when he broke the front window and banged on the door. He then left. She saw him return and knock on the door again. She heard the appellant tell the deceased, "I told you about coming to my house this time of night." She then heard the door open and heard it close. She saw the deceased "hit the ground outside a little ways from the porch." Shortly thereafter, she saw the appellant run out of the house.

Dallas Police Officer O'Connor testified that he arrived at 11:10 p.m. The deceased was dead at the time O'Connor arrived. O'Connor had a conversation with the appellant. She eventually led him to a trash pile, and he recovered appellant's knife where she had thrown it. O'Connor testified that the first thing appellant told him was: " 'I told him not to hit me any more.' "

Dallas Police Officer Steven Pitts, a witness for the defense, testified that he responded to a family disturbance call concerning appellant and the deceased during the afternoon before the stabbing. He stated that he had responded to similar calls on at least two prior occasions and that "my experience on those two previous calls was that [appellant] was the agitator." Officer Pitts testified that appellant "would always be yelling at [the deceased], shouting obscenities at him in public. . . ." On the afternoon before the stabbing, Officer Pitts advised the deceased to leave appellant's premises. Officer Pitts testified that this incident during the afternoon "was no more volatile than the other times I had been out there."

Sammy Boldon, the appellant's brother, also testified for the defense. Boldon stated that on the evening of the stabbing, he was worried about what "might happen to both of them [appellant and the deceased], because they was both going at it pretty bad." Boldon testified that he was worried about the deceased, as well as the appellant, being injured.

The appellant testified on her own behalf. She stated that she and the deceased had had fights before, and "[e]very time we'd fight, someone would always end up

getting hurt." Although appellant's brother wanted her to stay at his house that night, appellant wanted to stay at her own house in order to protect it, because the deceased had "tore up the house, turned over everything" on three or four prior occasions when appellant was not at home.

The appellant testified that the deceased came to her house that night between 10:45 and 11:00 p.m. She said that the deceased was "kicking and beating" on her front door. She stated that the door could be kicked open even when the knife was stuck in the doorjamb. Appellant testified that the knife began falling out of the doorjamb, that she picked up the knife, and "[t]hat's when the door come open, he said, 'Bitch, I'm going to kill you,' and he hit me." Appellant stabbed the deceased one time in the chest. Appellant testified:

Q. After.... he said 'I'm going to kill you,' and he hit you, and then you were defending yourself and that's when you stabbed him, is that correct?

A. Yes.

Q. Okay. What did you do next?

A. I started—I fought him back after he hit me. I just did like this. And I wasn't thinking about the knife being in my hand. I was thinking about protecting myself.

Carrie Wofford was called by the prosecution as a rebuttal witness. She told of a conversation with appellant earlier in the day. The appellant threatened to kill the deceased, and Wofford told appellant to think about it. Wofford testified that appellant "said 'I'm going to kill Rickie, Miss Carrie. I'm going to kill him.' And I said, 'Well, you should think about your children before you do that.'"

■ We hold that, although the issue of self-defense was raised by the evidence in this case, appellant's testimony alone does not conclusively prove self-defense as a matter of law. *Whitfield*, 492 S.W.2d at 504; *Cruz*, 629 S.W.2d at 860. Thus, whether the State disproved self-defense beyond a reasonable doubt was a question of fact to be determined by the trier of fact. *Nelson v. State*, 573 S.W.2d 9, 12

(Tex.Crim.App.1978). Here, the trial judge was the exclusive judge of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony. *Bellah v. State*, 653 S.W.2d 795, 796 (Tex.Crim.App.1983); *Thorn v. State*, 651 S.W.2d 39, 41 (Tex.App.—Dallas 1983, pet. ref'd). The trial judge was free to accept or reject the appellant's testimony. *Nelson*, 573 S.W.2d at 12; *Thorn*, 651 S.W.2d at 41. It is not the function of the court of appeals to reweigh the evidence presented at trial. *Thorn*, 651 S.W.2d at 41. Viewing the evidence in the light most favorable to the judgment, we must affirm appellant's conviction because there was evidence from which a rational trier of fact could find appellant guilty beyond a reasonable doubt.

We overrule appellant's ground of error and affirm the judgment of the trial court.

DEVANY, Justice, dissenting.

I respectfully dissent from the majority and would enter a judgment of acquittal for appellant.

The majority correctly notes that self-defense is a "defense" under section 2.03 of the Penal Code. As such, once the issue is raised, the State must disprove it beyond a reasonable doubt. *Luck v. State*, 588 S.W.2d 371, 375 (Tex.Crim.App.1979). Therefore, on review, we must determine if there was sufficient evidence for any rational trier of fact to conclude beyond a reasonable doubt that appellant was not acting in self-defense. *Cf. Van Guilder v. State*, 709 S.W.2d 178, 181 (Tex.Crim.App. 1985) (where affirmative defense at issue, reviewing court must determine if any rational trier of fact could have concluded that the defendant failed to prove his defense by a preponderance of the evidence).

The courts frequently state that self-defense is not proved as a matter of law unless the evidence is "uncontradicted." *Whitfield v. State*, 492 S.W.2d 502, 504 (Tex.Crim.App.1973). I suggest that such statements should be construed as shorthand statements of the rule that "[i]f there

is any evidence that establishes guilt beyond a reasonable doubt and if the trier of facts believes that evidence, we are not in a position to reverse the judgment on sufficiency grounds." *Lawrence v. State,* 700 S.W.2d 208, 211 (Tex.Crim.App.1985). To construe these statements otherwise would be to replace the ultimate burden of proof chosen by the legislature with one of the judiciary's choosing.

Other states do vary as to the degree of proof required to show self-defense: (1) defendant must merely raise reasonable doubt; (2) defendant must prove self-defense by a preponderance of the evidence; or (3) defendant must prove self-defense to the satisfaction of the jury. C. Torcia, *Wharton's Criminal Evidence* § 28 (13th ed.1972). Nevertheless, the statutory mandate, as well as the case law under *Luck,* requiring proof beyond a reasonable doubt is clear in Texas.

I conclude that even if the trial court, as the trier of facts, rejected all of appellant's testimony that she acted in self-defense, the State has not produced any affirmative evidence establishing lack of self-defense beyond a reasonable doubt. The transaction in the case at hand may be summarized as follows: The scene is at eleven o'clock at night in the appellant's home. She is naked, getting ready to go to bed. Present with her in the house is her stepdaughter. Suddenly, there is a pounding on the front door of the house. The daughter answers and, without opening the door, ascertains that it is the estranged husband of the appellant. His voice is loud and threatening and demands entrance. The daughter pleads with him to go away. He ignores her plea and continues pounding and attempting to break in. The appellant comes to the door, still naked, and tells the daughter to get a knife to place in a space around the door to hold it in place. After inserting the knife in place, appellant told the daughter to run and get the police.

At this point we have the appellant's testimony telling us that the estranged husband broke in and began hitting the appellant, stating "Bitch, I'm going to kill you." Appellant picked up the knife that slipped from the door frame because of the husband's kicking on the door. Appellant used the knife to defend herself. He reeled and stumbled back onto the porch and fell dead in front of the house. Sobbing, she went to her husband lying on the ground. She threw the knife into a trash can. When the police came, appellant was still bending over the dead body of the husband sobbing. She led the police officer to the trash can where she threw the knife.

This transaction raises self-defense as an issue. The State has the burden of proving that self-defense did not exist to justify the killing. The evidence provided by the state must be probative on that particular issue. No matter how hostile appellant was to the husband on previous occasions, at that point in time she had a right to be in her home and to retire for the night. The husband was the aggressor. He threatened physical injury to the appellant. He broke into the house. He was a man with presumably greater strength than appellant, who was a female. None of these facts were refuted by the State. Under the theory advanced by the majority, the appellant was denied the right of self-defense under any circumstances because of statements made prior to the transaction and hostility between the appellant and the estranged husband. Certainly, it would be difficult to think of a more fitting setting for the right of self-defense. If the appellant had any intent to kill the deceased, it would seem ridiculous to assume such intent while she was standing naked preparing to go to bed. The threat came from outside the house. Even the worst of mankind has a right to defend himself or herself within the walls of his or her home. The deceased was not invited; indeed, the evidence shows that he was warned by the police earlier in the day to stay away from the appellant, and it was conclusively established that the appellant made three requests of her husband to leave before the door burst open. For the prosecution to leave the impression that the appellant committed murder by the happenchance of

the drunken husband coming to attack appellant, is without merit.

I would hold that the State failed to produce any evidence to refute the claim of self-defense. The statements of the appellant prior to the transaction in this case could not be considered to erase the claim of self-defense because the deceased was the actor who brought about the killing by attempting to break into appellant's house. If the appellant had, for instance, gone to her husband's home on the premise of talking with him and then killed him, such prior statements could conceivably be considered as probative on the issue of self-defense. This would be evidence refuting the self-defense theory. But this was simply not the case. The prior threat, under these circumstances, is irrelevant to the aggressive behavior of the husband who was immediately threatening the appellant. *Cf. United States v. Moore*, 571 F.2d 76, 82 (2d Cir. 1978) (statement by one defendant of intent to take kidnapped victim out of state insufficient to show actual interstate transportation).

I would acquit appellant.