**Oscar Burnett COLLINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00581–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 21, 1988.

Donald H. Flintoft, Orsburn & Holland, P.A., Janet Seymour Morrow, Burnett & Morrow, Houston, for appellant.

John B. Holmes, Dist. Atty., Lynn Parsons, Mark Vinson, Asst. Dist. Attys., for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

OPINION

SAM BASS, Justice.

Appellant was indicted for murder, waived his right to a trial by jury, and pleaded not guilty. The trial court found appellant guilty, sentenced him to 15 years confinement, and ordered restitution of $3,475.

We affirm in part and reverse and remand in part.

In his first point of error, appellant contends that the evidence was insufficient to disprove his claim of self-defense "beyond reasonable doubt." Because appellant contests the sufficiency of the evidence, a detailing of the facts is in order.

The Houston Police Department dispatched Officer Kennedy and his partner to the home of appellant and Cross, the decedent, to· investigate a shooting. Officer Kennedy testified that in the master bedroom (where the body was found), there was a bloodstain on the floor and a .22 caliber revolver on the bed. The revolver was fully loaded, with a misfire in the chamber. Officer Kennedy also located a 30–30 caliber rifle on a table in the dining-room, two 30–30 caliber shells, and two other revolvers, one under the dining-room table and one in the living-room.

Two persons, in addition to appellant and the decedent, were in the house at the time of the shooting: Payton and Wilson. Shortly after the shooting, Payton gave a written statement that he had *not* seen the shot fired and had *not* been in the master bedroom at the time of the shooting. Payton said that he heard a shot and saw appellant run out of the master bedroom shouting, "She tried to kill me. She tried to kill me." Payton testified to the grand jury, approximately three months later, that immediately prior to the shooting, Cross was waving a gun and ranting that she intended to kill appellant. He again stated that he was not in the master bedroom at the time of the shooting and that

he saw appellant run from the room, shouting that Cross had tried to kill appellant.

At trial, however, Payton claimed to have been in the master bedroom at the time of the shooting and a witness to Cross' murder. Payton stated that he sat on a stool at the foot of the couple's king-size bed, Cross sat "sideways" on the side of the bed, with one leg on the bed and one foot on the floor, and appellant sat directly opposite Cross on the bed. Payton testified that although Cross had been waving a .38 caliber pistol in a dangerous manner, he felt the situation was pleasant, with the parties joking among themselves.

About the actual shooting, Payton testified that the deceased and appellant were sitting on the bed when the deceased said something to appellant, and appellant responded, "You shot me last week." Appellant then reached under the bed, removed a rifle, and shot the deceased from across the king-size bed.

Wilson, another witness testified that when he arrived at the house, Cross answered the door, flourishing a .38, and told him that she intended to kill appellant. Wilson, a home remodeler, testified that while working in the second bedroom, he heard Payton tell Cross to cease waving a gun. He heard a shot and saw an explosion in the plaster of the wall on which he was working.

The pathologist, Dr. Bellas, testified that the bullet that killed the decedent entered her body in a "head to toe" direction, or "almost directly downward." He testified further that the gun that discharged the bullet had to be within six inches of the decedent's body because of the trace amounts of soot around the wound on Cross' back.

Appellant's counsel specifically and repeatedly asked Dr. Bellas whether the decedent could have been shot from a distance of six or seven feet. Dr. Bellas steadfastly rejected this as a possibility. When the prosecutor questioned Bellas about the positions of the parties while they were sitting across from each other on the bed, Bellas stated that the unusual angle of the wound, and the presence of soot around the wound, prevented these positions from being consistent with the wound inflicted on Cross.

Appellant testified in his own defense. He stated that on the date of the shooting, the decedent was "very disturbed" and repeatedly threatened to kill him. He claimed that he was unable to leave the house because the burglar bars were locked and the decedent had the only keys. Furthermore, he claimed that after Payton arrived, while Payton was with appellant and the decedent, he, appellant, noticed for the first time the 30–30 rifle under the bed. He removed the rifle, thrust it toward the decedent, and instructed her to give him the .38.

Appellant contended that at this point Payton left the room. Appellant then moved around the bed and requested that the decedent give him the gun. She complied by laying it on the floor. As he reached for the .38, he noticed for the first time that she also had a .22 pistol.

Appellant testified that the decedent aimed at appellant with the .22, that he swung at her with his rifle to dislodge the pistol, that she ducked and the rifle hit the back of her head, and that the gun then discharged into her back. Appellant testified repeatedly that he did not intend to shoot the decedent, that he did not intentionally pull the trigger, and that when he swung the rifle, he did so to keep her from shooting him.

"Self-defense" is a justification excluding criminal responsibility under the Penal Code. Tex.Penal Code Ann. secs. 9.31, 9.32 (Vernon 1974). As a justification, self-defense is a statutory "defense." *See* Tex. Penal Code Ann. secs. 2.03, 9.02 (Vernon 1974).

The significance of "self-defense" being a "defense" under the Penal Code is that, when a defendant successfully raises the issue of self-defense, the burden shifts to the prosecution *to disprove self-defense beyond reasonable doubt. See* Tex.Penal Code sec. 2.03(d) (Vernon 1974); *Luck v. State,* 588 S.W.2d 371, 375 (Tex.Crim.App. 1979), *cert. denied,* 446 U.S. 944, 100 S.Ct.

2171, 64 L.Ed.2d 799 (1980). The Practice Commentary notes:

> The effect of Subsection (d) is to require the state to disprove a defense beyond a reasonable doubt after the issue has been properly raised by the evidence. In other words, the defendant has the burden of producing evidence to raise a defense, but the prosecution has the final burden of persuasion to disprove it.

Tex.Penal Code Ann., sec. 2.03(d).

Therefore, our analysis is two-fold. First, we ask, "Did appellant raise the issue of self-defense at trial?" Second, if we answer the first question in the affirmative, we ask, "Did the State disprove appellant's defense beyond a reasonable doubt?"

▉ In *Warren v. State*, 565 S.W.2d 931, 934 (Tex.Crim.App.1978), the court held that the defendant had produced sufficient evidence to raise the issue of self-defense because the record reflected: (1) the decedent had threatened to kill the defendant on the day of the killing; (2) the defendant had seen her with a gun on the day of the shooting; (3) the defendant believed she had a weapon when she entered his apartment; and, (4) the defendant had no place to which he could retreat when he shot her. The facts in the instant case are identical to those of *Warren*. Furthermore, the defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Id.* We hold that the defendant raised the issue of self defense. *See also id.* at 933–34.

Moving to the second question, *viz.*, whether the State produced sufficient evidence to disprove beyond reasonable doubt that appellant acted in self-defense, the trial court had before it two theories explaining the decedent's death: (1) Payton's version of events, in which appellant was sitting across the bed from Cross when he shot her; and, (2) appellant's version of events, in which he shot her accidentally while trying to disarm her.

Appellant contends that the State's theory was physically impossible, so the State failed to carry its burden and disprove that appellant acted in self-defense. Appellant bases his argument on the State's own evidence, the pathologist's testimony and report, which reflected that the gun that shot the decedent had to have been within one to six inches of her body and acutely angled, pointing down her back. Appellant states that Payton's version of events required that appellant shoot the decedent across a king-size bed—a distance of considerably more than six inches.

Appellant contends that the evidence produced by the State was insufficient *to disprove* self-defense as a matter of law. This argument amounts to an assertion that the proof shows, as a matter of law, that he killed the decedent in self-defense. *See Whitfield v. State*, 492 S.W.2d 502, 504 (Tex.Crim.App.1973); *Williams v. State*, 710 S.W.2d 828 (Tex.App.—Dallas 1986, pet. ref'd); *Sebree v. State*, 695 S.W.2d 303, 305–06 (Tex.App.—Houston [1st Dist.] 1985, no pet.).

▉ For an appellate court to hold that, as a matter of law, a defendant in a homicide prosecution killed in self-defense, the evidence must be uncontradicted and no issue presented for the factfinder's determination. *Whitfield v. State*, 492 S.W.2d at 504; *Williams v. State*, 710 S.W.2d at 828.

The sufficiency of the evidence is a question of law. In resolving a sufficiency question, we view the evidence in the light most favorable to the trial court's judgment. *McGoldrick v. State*, 682 S.W.2d 573, 577 (Tex.Crim.App.1985).

In so doing, we must consider whether: (1) any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt, *id.*; and (2) whether any rational trier of fact could have found at least one of the essential elements of self-defense disproved beyond reasonable doubt. The issue on appeal is not whether we, as a court, believe the prosecutor's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence that establishes guilt, beyond reasonable doubt, and if the

trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of evidence grounds. *Id.*

Appellant's argument turns on the pathologist's testimony. The rule is well-established that the credibility of witnesses is to be assessed by the trier of fact. *Coe v. State*, 683 S.W.2d 431, 438 (Tex.Crim.App. 1984). And the trier of fact may choose not to believe the testimony of an expert. *Coulter v. State*, 494 S.W.2d 876 .(Tex. Crim.App.1973).

■ The trial court could have chosen to believe Payton's testimony, and chosen to disbelieve the testimony of the pathologist. On the basis of its faith in Payton's testimony, the trial court could have found that appellant's claim of self-defense was disproved beyond reasonable doubt. Finally, the trial court could have chosen to believe the State's version of events over that of appellant's and, therefore, could have found all of the elements of murder established beyond reasonable doubt. We hold that there was sufficient evidence for the trial court to find beyond reasonable doubt that appellant's acts constituted murder and not self-defense.

We overrule appellant's first point of error.

■ In his second point of error, appellant contends that the restitution assessment, required as a condition of parole, was not supported by sufficient evidence and, therefore, violated due process. On June 25, 1987, the trial court assessed punishment and imposed a 15–year sentence upon appellant. On July 9, 1987, the trial court heard and overruled appellant's motion for new trial and the following colloquy took place:

> Prosecutor: Your honor, what I would like to make the Court aware of, to continue on this case, to try to determine the funeral expenses that were associated with having the deceased transported from Houston, Texas, back to Wisconsin, that came out to be, if I recall—I think the figure was $3,475. That would be owed to a David Cross, who is the deceased's brother. We would ask that this figure be included in the judgment

> and that if the defendant is granted parole, that he be required to make restitution to David Cross in the amount of $3,475.

> Court: Okay. I'll go ahead and make that part of the judgment.

The State never offered evidence on restitution. Appellant's counsel failed to object.

In *Miller v. State*, 667 S.W.2d 773, 774 (Tex.Crim.App.1985), the Court of Criminal Appeals held that the defendant's failure to bring to the trial court's attention his complaint concerning the sufficiency of the evidence waived this error, and he could not raise it on appeal. *See also Brown v. State*, 640 S.W.2d 275, 279 (Tex.Crim.App. 1982) (and cases cited therein); *Holley v. State*, 713 S.W.2d 381, 385 (Tex.App.— Amarillo 1986, pet. granted); *Banks v. State*, 662 S.W.2d 616, 617 (Tex.App.— Houston [14th Dist.] 1983, pet. ref'd). None of these cases involve an issue concerning restitution. However, *Brown* and *Banks* concern the weight of evidence produced to establish value, and hold that testimony of an approximate value is sufficient to support an element of an alleged offense when the defendant fails to object.

Although in each of these cases (except *Holley*) the court held that questions regarding sufficiency of the evidence can be waived for appeal, each involved a situation different from that of the instant case: testimony at trial tended to establish a factual proposition; the defense had the opportunity to cross-examine; and the defendant failed to object to this testimony's adequacy. Here, on the other hand, the prosecutor alluded to a hearsay statement concerning an approximate amount incurred by the victim's brother in transportation expenses for moving the victim's body out of state. This unsworn statement was based on hearsay that, under the circumstances, could not be cross-examined by appellant.

In the *Holley* case, the court never addressed whether the defendant *objected* on sufficiency grounds at trial. Instead, the issue of evidential sufficiency was waived because the appellant in that case failed to

point to anything in the record, or to any supporting authority, on appeal that could support his position.

Under these circumstances, we hold that appellant was not required to object. *Flanary v. State,* 166 Tex.Cr.R. 495, 316 S.W.2d 897, 898 (1958) ("[a]ppellant correctly contends that the absence of sufficient proof that he drove a motor vehicle on a public road in Knox County while intoxicated may be pointed out and relied upon in this Court, though not raised or made an issue in the trial court.") For this reason, we hold that we are able to address appellant's contention about evidential sufficiency.

 In addressing appellant's second point of error, we observe as an initial matter that, at the time of trial, Tex.Code Crim.P.Ann. art. 42.12, sec. 15(g) (Vernon 1987), allowed restitution to be paid to "the victim of the prisoner's crime," as a condition of parole. We hold that the evidence in the instant case was insufficient to support a judgment suggesting restitution as a requirement of parole. The standard of review in considering whether a trial court erred in setting restitution is abuse of discretion. *Cartwright v. State,* 605 S.W.2d 287, 288–89 (Tex.Crim.App.1980). As noted in *Cartwright,* "[d]ue process considerations thus implicated require that there must be evidence in the record to show that the amount set by the court has a factual basis." *Id.; Thompson v. State,* 557 S.W.2d 521, 525–26 (Tex.Crim.App.1977).

The State provided *no* evidence of any amount incurred by the victim or her family. The prosecutor merely stated, "if I recall—I think the figure was $3,475." The trial court erred in entering this figure as a suggested restitutionary requirement of parole. Because this error relates to a suggested parole condition only, and because the trial court suggested that condition, we abate the appeal and remand the cause to the trial court for a hearing to determine the just amount of restitution to be suggested. *See Cartwright v. State,* 605 S.W.2d at 289.

We sustain appellant's second point of error.

We abate the appeal, set aside the amount of restitution, and remand the cause for a hearing to determine the amount of restitution.

In all other respects, we affirm the trial court's decision.

EVANS, Chief Justice, concurring and dissenting.

I concur in the holding of the majority that affirms the appellant's conviction. I dissent from the majority holding that abates the appeal, sets aside the order of restitution, and remands the cause to the trial court for a determination of the amount of restitution.

First, I disagree with the majority's conclusion that the State produced "no evidence" to support the trial court's finding on restitution. The prosecutor represented to the court that, as he recalled, the amount of funeral transportation expenses was in the sum of $3,475. The prosecutor's statement, made in open court, constituted *some* evidence, which in the absence of an objection supports the trial court's factual determination of the amount of restitution.

In *Brown v. State,* 640 S.W.2d 275, 279 (Tex.Crim.App.1982), a witness in a theft case said "she thought" the replacement value of a sewing machine "was about $100." The court held that the State's proof was sufficient, in the absence of an objection, to show the value of the stolen item. The court noted that if the "manner of proving value" did not meet the defendant's approval, it was his obligation to voice an objection when the testimony was introduced. *Id.* at 279.

Here, the appellant made no objection when the prosecutor stated the amount of the funeral transportation expenses. He also stood by in silence when the court, at State's request, stated that it would include the stated figure in its judgment as the amount of the required restitution.

In my opinion, the appellant waived any objection concerning the manner in which the evidence was presented to the court on the matter of restitution. *See Brown,* 640 S.W.2d at 275. He also waived any objec-

tion to the court's receipt of the prosecutor's unsworn testimony as evidence in the case. *See Spriggs v. State,* 163 Tex.Cr.R. 167, 289 S.W.2d 272, 274 (1956); *Goldsmith v. State,* 32 Tex.Crim. 112, 22 S.W. 405, 406 (1893).

I would affirm the trial court's judgment in all respects.