Robert **HERNANDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–87–01112–CR.

Court of Appeals of Texas, Dallas.

June 21, 1989.

John H. Hagler, Dallas, for appellant.

Carolyn Fitzgerald, Dallas, for appellee.

Before ENOCH, C.J., and McCLUNG and LAGARDE, JJ.

LAGARDE, Justice.

### ON MOTION FOR REHEARING

We grant the appellant's motion for rehearing, withdraw our opinion of April 20, 1989, and substitute this opinion as the opinion of the Court.

Robert Hernandez appeals his conviction by a jury for murder. The jury assessed punishment at sixty-five years' confinement. Hernandez asserts that we should reverse his conviction because: (1) the evidence established self-defense as a matter of law; (2) the State's argument invited the jurors to consider the parole laws; (3) the jury instructions on the parole laws violated both the federal and state constitutions; (4) the court failed to instruct the jury on Hernandez's right to arm himself and to seek an explanation; and (5) the court improperly excluded evidence of the violent character of a witness. For reasons that follow, based on reversible error occurring during the punishment phase of the trial, we reverse the trial court's judgment and remand for further proceedings.

The record shows that Hernandez's brother, Michael, fought with the deceased's brother, Poncho, approximately two weeks before the murder. Hernandez and Michael knocked on the deceased's door at three o'clock in the morning of September 27, 1986, the date of the murder. Responding to the knock, the deceased's mother walked out onto the front porch. The Hernandez brothers first asked to talk to Poncho; Poncho was asleep. Aware of the previous fight between his brother Poncho and Michael, Ruben Lueda, the deceased, walked out onto the front porch to speak with the Hernandez brothers. He told his mother to go inside, which she did. Shortly, Maribel, the deceased's sister, looked outside to see if everything was okay. It was not. She yelled that Hernandez and Michael were "grabbing" Ruben. After pushing Ruben down, Hernandez and Michael ran away. Ruben had been stabbed and was covered with blood; he died later that night.

### Self–Defense As a Matter of Law

In his first point of error, Hernandez claims that the evidence established self-defense as a matter of law. We disagree.

### Standard of Review

In our original opinion, we applied the "uncontradicted evidence" standard of review set forth in *Whitfield v. State,* 492 S.W.2d 502, 504 (Tex.Crim.App.1973), in holding that the evidence presented an is-

sue for resolution by the fact finder. On motion for rehearing, Hernandez urges that post–1974, that standard is no longer applicable. In support of his contention, Hernandez cites. *Torres v. State,* 751 S.W.2d 705 (Tex.App.—Corpus Christi 1988), *pet. ref'd,* No. 804–88 (Tex.Crim.App. May 3, 1989). The State, on the other hand, relying on the recent case of *Collins v. State,* 754 S.W.2d 818 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd), contends that this Court used the proper standard. Although each of these cases was cited by the respective party with a designation of "no pet.," the Court of Criminal Appeals has recently refused petition for discretionary review in both cases. Consequently, we felt compelled to grant Hernandez's motion and address the issue of the standard of review of the self-defense issue.

Recent cases do state that, in order for an appellate court to hold as a matter of law that the defendant killed in self-defense, the evidence must be uncontradicted and present no issue for the fact finder's determination. *Collins,* 754 S.W.2d at 821; *Williams v. State,* 710 S.W.2d 828, 828 (Tex.App.—Dallas 1986, pet. ref'd). However, in each of those cases, the courts also reviewed the evidence to determine if the State disproved the theory of self-defense beyond a reasonable doubt. Neither court in *Torres* explicitly rejected the "uncontradicted evidence" standard in its opinion. Nevertheless, the opinions in *Torres* make it clear that the real question to be resolved by an appellate court is whether any rational trier of fact could have found that the State disproved self-defense beyond a reasonable doubt. *See Torres,* No. 804–88, slip op. at 2; *Torres,* 751 S.W.2d at 707.

█ Stated as succinctly as possible, the defendant must raise the issue of self-defense, but the State must disprove the theory of self-defense beyond a reasonable doubt. *See Torres,* No. 804–88, slip op. at 2; *Collins,* 754 S.W.2d at 820; *Torres,* 751 S.W.2d at 707–08; *Williams,* 710 S.W.2d at 828. In resolving a sufficiency question, we view the evidence in the light most favorable to the trial court's judgment. *Collins,* 754 S.W.2d at 821; *Torres,* 751 S.W.2d at 707; *Williams,* 710 S.W.2d at 828–29.

█ Hernandez raised the issue of self-defense; however, the record contains a substantial amount of evidence that contradicts Hernandez's contention. When arrested on the night of the murder, Hernandez had no observable injuries. Dr. Gilliland, the assistant medical examiner, testified that the deceased's wounds appeared inconsistent with injuries obtained in a fight and, in fact, stated that the deceased's stab wounds were consistent with injuries inflicted while one was restrained or immobilized. This testimony coincides with testimony from the deceased's sister Maribel, who testified that she observed the Hernandez brothers restraining Ruben. According to Maribel, Ruben stated, "Hey. I thought you said everything was going to be cool," and, at that point, she saw Hernandez making stabbing motions with a shiny object. The deceased's uncle then drove up and the Hernandez brothers ran away. The family observed Ruben bleeding profusely; he was immediately taken to the hospital where he died. Based on these facts, we conclude that a rational trier of fact could have found that the State disproved the theory of self-defense beyond a reasonable doubt. Consequently, we overrule Hernandez's first point.

### The State's Jury Argument

█ In his second point of error, Hernandez complains that the following closing argument by the State invited the jury to consider the parole laws:

You know when he received that ninety-nine year sentence back in 1976, then you know where he is now. I'm going to suggest to you, ladies and gentlemen, that you had better do all the law will allow you to do to take him away and separate him from us. You're making a mistake with him if you think by coming out and giving him a lighter sentence that you're doing him any good....

At this point, defense counsel objected. Prior to this, however, the prosecutor had argued, without objection, as follows:

> If you can sit here and even think that after a man has been sentenced to ninety-nine years in the Texas Department of Corrections, ten years later, ladies and gentlemen, he's back in a Dallas County courtroom, not for aggravated robbery, but for murder. He is only twenty-eight years old. He's been in the penitentiary ten years of his life and already twice he's been here in this courtroom look [sic] at a life sentence. Now what does that tell you about Robert Hernandez?

To preserve error for appellate review, the general rule is that defense counsel must make a timely, proper, and specific objection to the prosecutor's jury argument. *See Miller v. State*, 741 S.W.2d 382, 391 (Tex.Crim.App.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988). An objection must be made as soon as the basis for objection becomes clear, and failure to timely object waives error. *See id.; Thompson v. State*, 691 S.W.2d 627, 635 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). We hold that, by failing to lodge a timely objection, Hernandez waived error. However, assuming for the sake of argument that error is preserved, we address Hernandez's assertion that the prosecutor invited the jury to consider the parole laws.

■ Without objection, Hernandez's prior conviction, sentence, and release date were admitted into evidence. Although the State did mention these unobjected-to facts during its closing argument, the State never directly mentioned or alluded to the parole laws.

In general, jury arguments must fall into these four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to the argument of opposing counsel; and (4) plea for law enforcement. *Dunbar v. State*, 551 S.W.2d 382, 384 (Tex.Crim.App.1977). Since the State introduced evidence of Hernandez's prior conviction, sentence, and release date, the prosecutor merely summed up the evidence and made a plea for law enforcement in his closing argument. *See Todd v. State*, 598 S.W.2d 286, 297 (Tex. Crim.App.1980). Consequently, we overrule Hernandez's second point of error.

*Unconstitutional Parole Instructions*

In his third and fourth points of error, Hernandez asserts that the trial court committed reversible error by charging the jury with the statutory parole instruction contained in article 37.07 section 4(a) of the Texas Code of Criminal Procedure,[1] which has subsequently been determined to be unconstitutional. We agree.

The Court of Criminal Appeals has held that the statutory parole instruction violates the separation of powers and due course of law provisions of the Texas Constitution. *Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (op. on reh'g). However, in reaching its conclusion that the error in giving the unconstitutional parole instruction was harmless beyond a reasonable doubt, the Court in *Rose* considered three factors: (1) a "curative" parole instruction; (2) the facts of the case; and (3) appellant's prior criminal record. *Id.* at 554–55. Together, these three factors led the Court in *Rose* to conclude, beyond a reasonable doubt, that the instruction complained of made no contribution to the punishment assessed. *Id.* at 554–55.

In regard to the first factor, the Court held that the "curative" parole instruction created a rebuttable presumption that the jury did not discuss parole during deliberation. *Id.* at 554. The "curative" instruction in *Rose* stated:

> You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.

*Id.*

The trial court here gave a similar instruction. In addition to the statutory in-

---

1. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.1989).

structions, the court instructed the jury, in pertinent part:

> Further you are instructed that you are not to mention, refer to, discuss or consider how long the defendant will be required to remain in confinement to serve the sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas.

Each curative instruction directs the jury not to discuss parole, and each raises the presumption that the jury obeyed the instruction.

■ Applying *only* the factors considered by the Court in *Rose, i.e.,* the non-statutory curative instruction, the facts and circumstances surrounding the murder by stabbing, and the unobjected-to evidence that the murder was committed approximately two months after Hernandez's release on parole after having served approximately ten years of a ninety-nine-year sentence for aggravated robbery with a deadly weapon, we determine, beyond a reasonable doubt, that the error made no contribution to the punishment assessed. Here, however, we must proceed further.

■ The presumption that the jury followed the court's instructions is a rebuttable presumption.* *Rose,* 752 S.W.2d at 554. At the motion for new trial hearing, Hernandez and the State presented conflicting evidence of the jury's discussion of the parole laws that occurred during the course of its deliberations.[2] We must, therefore, consider that evidence, and based on the *competent* evidence before us, determine whether the presumption is rebutted by that evidence. If the presumption is rebutted by that evidence, we must determine whether the conduct rebutting the presumption constituted harm, thereby rendering reversible the otherwise harmless error in giving the unconstitutional statutory instructions.

Before considering that matter, however, we must resolve the threshold issue of the impact, if any, of rule 606(b) of the Texas

Rules of Criminal Evidence. Rule 606(b) states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify as to any matter relevant to the validity of the verdict or indictment.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

TEX.R.CRIM.EVID. 606(b).

### *Law Prior to Rule 606(b)*

Prior to September 1, 1986, the effective date of rule 606(b), grounds for a new trial were found in article 40.03 of the Texas Code of Criminal Procedure. Although article 40.03 was repealed in form, the substance of that article is now found in rule 30(b) of the Texas Rules of Appellate Procedure. Rule 30(b) and case law development under former article 40.03 provide a new trial for several instances of jury misconduct: quotient verdicts, corrupt conduct, receiving other evidence, intoxication or conversing with a person about the case after deliberations have begun, and any "misconduct" which the judge believes caused the accused not to receive a fair trial.

### *Rule 606(b)*

■ Although the "except" clause contained in rule 606(b) seems to negate much of the general rule, which otherwise would prohibit jurors from testifying about events inside the jury room, we conclude that the "except" clause is meaningful only if it is read as a reference to rule 30(b) and the case law developed under its predeces-

---

**2.** We note that jury misconduct specifically based on the jury's discussion of the parole laws

was not asserted in Hernandez's amended motion for new trial.

sor as to the grounds on which a new trial must be granted. *See* TEX.R.APP.P. 30(b). We further conclude that, under rule 606(b), jurors remain incompetent to impeach their verdict by affidavit or testimony about their mental processes during deliberations except where relevant to an *overt act* of jury misconduct. *See Daniels v. State,* 600 S.W.2d 813, 816 (Tex.Crim. App.1980); *Frias v. State,* 169 Tex.Crim. 549, 335 S.W.2d 765, 765 (Tex.Crim.App. 1960).

■ The express language of rule 606(b) states that a juror may not testify about *"any* ... statement occurring during the jury's deliberations or to the effect of *anything* upon his or any other juror's mind ... as influencing him to assent to ... the verdict." However, we conclude that, by affidavit or testimony, a juror may testify about *an overt act* which has been held under prior case law to constitute "jury misconduct" or the receipt of "other evidence," thereby rendering it "relevant to the validity of the verdict or indictment" under rule 606(b). That is to say, a juror *may testify* to the fact that the impermissible conduct occurred, but *may not testify* to the actual content of the statement or statements constituting the impermissible conduct. In sum, we conclude that the law in the area of jury misconduct is not changed by rule 606(b).[3] Inasmuch as rule 606(b) places no independent limit on the ability of jurors to attack a verdict, the only limitation is relevance. Thus, we look to prior case law and, limited by relevance, we must determine what is "relevant to the validity of the verdict or indictment."

■ The court here gave the jury a statutorily mandated parole law instruction that has since been declared unconstitutional in *Rose v. State.* A law that is declared unconstitutional is void from its inception. *Lopez v. State,* 757 S.W.2d 777, 778 (Tex. Crim.App.1988). However, the trial court also gave a "curative" instruction which, if followed, either actually or presumptively, renders any error in giving the unconstitu-

tional instruction harmless. *Rose,* 752 S.W.2d at 554. The jury's discussion of the parole laws, if any, constituted an overt act. Therefore, if relevant, the court could properly consider evidence that the jurors engaged in the overt act of discussing parole laws. The court could also consider whether the jury engaged in the overt act of discussing the effect of the parole laws. If a court could not hear evidence that a jury discussed the matters which, under rule 30(b) and case law development under its predecessor, constitute grounds for a new trial, rule 30(b) would have no legal efficacy.

■ In his amended motion for new trial, however, Hernandez did not assert jury discussion of the parole laws, in violation of the court's charge, as jury misconduct. Consequently, we conclude that the jury's discussion of the parole laws during its deliberations is not relevant to prove the allegations asserted in Hernandez's amended motion for new trial. It follows, then, that the evidence is not "to any matter relevant to the validity of the verdict or indictment," as required by rule 606(b), insofar as the allegations contained in his amended motion for new trial are concerned. However, the testimony was not objected to by the State, and Hernandez specifically points to this testimony in the record before us as evidence that he was harmed by the article 37.07 instructions. *Rose* specifically states that the presumption that the jury followed the curative instruction is rebuttable. *Rose,* 752 S.W.2d at 554. Therefore, under the specific facts and issues raised in this case, we conclude that evidence of the overt act of the jury's discussion of the parole laws was "to any matter relevant to the validity of the verdict." To conclude otherwise would effectively result in a curative instruction creating an irrebuttable presumption. As we have noted, *Rose* specifically states to the contrary. It seems clear, then, that the Court of Criminal Appeals did not intend for rule 606(b) to exclude evidence that the

---

**3.** Subsequent to our original opinion in this case, the Amarillo Court of Appeals in *Buentello v. State,* 770 S.W.2d 917, 918 (Tex.App.—Amaril-

lo 1989, n.p.h.), reaches the same conclusion concerning rule 606(b).

jury engaged in the overt act of discussing parole laws.

Having concluded that evidence of overt acts, limited by relevance, remains admissible under rule 606(b), we must now determine, based on the *competent* evidence before the trial court, whether the jury improperly discussed the parole laws during its deliberations. If so, we must decide if this rebuts the presumption that the jury followed the court's instruction not to do so, and, if it did, whether the improper discussion of the parole laws by the jury constituted harm thereby rendering reversible the otherwise harmless error.

▓ The evidence at the motion for new trial hearing is disputed as to whether the jury discussed parole during its deliberation. Two jurors stated that some members of the jury discussed the parole laws and even discussed how the parole laws would affect Hernandez's sentence. The foreman of the jury testified that the jury did not discuss parole; or at least, he did not remember such a discussion. Without objection, three jurors each testified about their mental processes and the perceived mental processes of the other jurors. Evidence of the mental processes of jurors is clearly inadmissible evidence. A juror cannot impeach his own verdict. *See Daniels,* 600 S.W.2d at 816; *Frias,* 335 S.W.2d at 765; TEX.R.CRIM.EVID. 606(b). Where the trial or hearing is to the court, the judge is presumed to have ignored inadmissible evidence. *Ozack v. State,* 646 S.W.2d 941, 943 (Tex.Crim.App.1983). Applying the presumption that the trial court disregarded inadmissible evidence, we only consider the *competent* evidence properly admitted during the hearing. *Contra Austin v. State,* 748 S.W.2d 546, 548 (Tex.App. —Beaumont 1988, pet. ref'd).

The competent evidence conflicts as to whether the jury discussed parole during its deliberations. However, in its findings of fact, the trial court found that the jurors did discuss the parole laws. It is axiomatic that issues of fact raised at a hearing on motion for new trial are for the determination of the trial judge and, where the evidence conflicts, the court does not abuse its discretion if the evidence is sufficient to support the facts as found by the fact finder. Inasmuch as the evidence here is sufficient to support the trial court's finding of fact, we must conclude that the jury discussed parole. Thus, the trial court's fact finding rebuts the presumption. Eliminating, then, the presumption as a factor and considering the competent rebutting evidence, in addition to the other factors considered by the court in *Rose,* 752 S.W.2d at 554–55, we must determine if the unconstitutional charge contributed to the punishment assessed.

▓ Although it could be said, with some merit, that the jury's discussion of the parole laws resulted not from the unconstitutional statutory instructions, but rather from a violation of the court's curative instruction, nevertheless we cannot determine, beyond a reasonable doubt, based on the record before us, that the error made no contribution to the punishment assessed.[4] *See Austin,* 748 S.W.2d at 548. The State has the burden of showing that constitutional error is harmless beyond a reasonable doubt. *See Satterwhite v. Texas,* 486 U.S. 249, ——, 108 S.Ct. 1792, 1794, 100 L.Ed.2d 284 (1988); *Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 829, 17 L.Ed.2d 705 (1967); *Foster v. State,* 687 S.W.2d 65, 66 (Tex.App.—Dallas 1985, pet. ref'd). Here, the State has failed to meet that burden. We sustain appellant's third and fourth points of error.

---

**4.** We note that a jury's discussion of parole law can also constitute jury misconduct. *See Sneed v. State,* 670 S.W.2d 262, 266 (Tex.Crim.App. 1984); TEX.R.APP.P. 30(b)(7). In such a case, the trial court must grant a new trial if the defendant can carry his burden of showing that there was a misstatement of parole law during deliberations, asserted as a fact by a juror who professed to know the law and which was relied upon by other jurors who, as a consequence, changed to a harsher sentence. To assert jury misconduct, as set out in *Sneed,* a new trial must be requested on those specific grounds. *See* TEX.R.APP.P. 30(a). Hernandez failed to request a new trial based on those specific grounds, and he does not now assert as a point on appeal that the jury's discussion of the parole laws constituted jury misconduct.

*Right to Arm and Seek Explanation*

 In his fifth point of error, Hernandez complains that the trial court failed to instruct the jury on his right to arm himself and seek an explanation. We disagree. The trial court included the following instruction in its charge to the jury:

> You are instructed that if threats were made by the deceased to take the life of the defendant, or to do him serious bodily injury, or the defendant reasonably believed they were made, then the defendant had the right under the law to arm himself and go to the deceased to seek an explanation of such threats and his right of self-defense would not in any manner be cut off or abridged for thus acting.

Since the trial court included an instruction in its charge to the jury concerning the law relevant to Hernandez's right to arm himself and seek an explanation and, further, since we conclude that the instruction was sufficient to protect Hernandez's interests, we overrule Hernandez's fifth point of error.

*Character Evidence*

 In his final point of error on original submission, Hernandez claims that the trial court erred in disallowing the defense to introduce evidence of the deceased's uncle's character as a violent person. The defense attempted to elicit the following testimony from Hernandez:

> Q. What were you trying to do when you did stab him?
> A. [The Appellant] Trying to defend myself. Yes, I was trying to defend myself, but I wasn't trying to kill him. I thought I was doing—I was scared, you know. I was just trying to get away. I mean, I couldn't get away. That's all I could do. What else could I do?
> Q. Now, did you know his uncle before?
> A. I don't know his uncle. I have heard of him.
> Q. What had you heard of him?
> MS. SIMS: Judge, I object to hearsay.
> THE COURT: Sustained.
> MR. ANDERSON: I would submit that at this point we would have a right to show the Defendant's state of mind at the time and I think that any knowledge that he might have had of reputation of the uncle, who was one of the people that he considered himself defending against, would be relevant.
> THE COURT: Objection sustained.

According to Hernandez and Hernandez's brother, the deceased's uncle stood approximately nine feet behind the deceased with a gun in his hand while Hernandez stabbed the deceased. Hernandez now urges that the trial court should have allowed reputation evidence of the uncle's violent character for the purpose of showing Hernandez's state of mind at the time of the murder since "both the uncle and deceased were acting together in the assault on the appellant." He argues that it was relevant to his theory of self-defense.

As authority for this proposition, Hernandez relies on *Beecham v. State,* 580 S.W.2d 588 (Tex.Crim.App.1979). The Court in *Beecham* stated:

> The general reputation of the *deceased* as a violent and dangerous character and specific acts of violence or misconduct of the *deceased* which show his violent character are admissible in a homicide case where there is some evidence of some act of aggression by the *deceased* which gives rise to a claim of self-defense on the part of the defendant.

*Id.* at 590 (emphasis added). This general rule has now been codified in Texas Rule of Criminal Evidence 404(a)(2). This rule states:

> (2) *Character of victim.* Subject to Rule 412, evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of peaceable character of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

TEX.R.CRIM.EVID. 404(a)(2). Under prior case law and under rule 404(a)(2), inquiry into the violent and dangerous character of only the *victim* in a homicide case is permitted.

Hernandez cites no authority, nor do we find any authority, for the proposition that

one may inquire into the violent, dangerous, or peaceable character of anyone other than the victim in a homicide case. Failure to cite authority leaves nothing for this Court to review. *See McWherter v. State,* 607 S.W.2d 531, 536 (Tex.Crim.App.1980).

Further, rule 52(b) of the Texas Rules of Appellate Procedure provides, in pertinent part:

> (b) Informal Bills of Exception and Offers of Proof. When the court excludes evidence and no party requests an offer of proof, no offer is necessary to preserve error if the substance of the evidence is apparent from the context within which questions were asked. Otherwise, when the court excludes evidence, the party offering same shall as soon as practicable, *but before the court's charge is read to the jury,* be allowed to make, in the absence of the jury, an offer of proof in the form of a concise statement.

TEX.R.APP.P. 52(b) (emphasis added). We conclude that the substance of the excluded evidence is not apparent from the context within which questions were asked. *See* TEX.R.APP.P. 52(b). We further conclude that Hernandez failed to preserve this point for appellate review because he failed to offer a bill of exception to show the substance of the excluded testimony. TEX.R.APP.P. 52(b); *see Hurd v. State,* 725 S.W.2d 249, 253 (Tex.Crim.App.1987). Additionally, Hernandez contends that the magistrate who heard his Motion for New Trial improperly refused to allow his bill of exception at that time. Inasmuch as Hernandez made his request for the first time at the motion for new trial hearing, he failed to make his offer *before the trial court's charge was read to the jury* as required by rule 52(b). Consequently, we hold that Hernandez has failed to preserve for review this evidentiary point of error.

### *Amended Article 44.29*

■ On motion for rehearing, Hernandez asserts that our original opinion apparently applied article 44.29(b) of the Texas Code of Criminal Procedure and thereby violated provisions contained in the United States Constitution and Texas Constitution prohibiting ex post facto laws.[5] Our original opinion did not state, nor do we now state, that this cause is remanded to the trial court for a new trial solely on the issue of punishment according to the provisions of article 44.29(b). We only state that this case is remanded for further proceedings. This Court has previously held that article 44.29(b) is directed at the trial court to take appropriate actions in appropriate circumstances, and the proper forum to urge application or nonapplication of article 44.29(b) is the trial court. *See Ex parte Sewell,* 742 S.W.2d 393, 397 (Tex. Crim.App.1987) (op. on reh'g); *Turner v. State,* 751 S.W.2d 240, 243 (Tex.App.—Dallas 1988, pet ref'd). Because we have nothing before us to suggest what, if any, proceedings will occur in the trial court, the issue of the application of article 44.29 is premature. We do note, however, that one of our sister courts has decided the ex post facto issue adversely to Hernandez's position. *See Goodlow v. State,* 766 S.W.2d 352, 355 (Tex.App.—Texarkana 1989, pet. pending).

Having sustained points of error three and four, we reverse the trial court's judgment based on reversible error occurring at the punishment stage and remand to the trial court for further proceedings.

---

5. U.S. CONST. art. I, § 10; TEX. CONST. art. I, § 16.