Jessie Lee SAXTON, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–87–441–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 17, 1989.

---

* The language in the warranty states that, "This warranty shall be governed by the State of Indiana...."

George J. Delaney, Donald H. Flintoft, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for the offense of murder. A jury found Appellant guilty as charged and found that a deadly weapon was used in the offense. Following a presentence investigation, the court assessed Appellant's punishment at fifteen years in the Texas Department of Corrections and restitution in the amount of $1,300.00. We reverse the judgment of the trial court and render a judgment of acquittal.

Appellant asserts three points of error on appeal. In his first point of error, Appellant contends that the evidence was insufficient to support his conviction because the evidence raised the defense of self-defense and the State failed to disprove self-defense beyond a reasonable doubt. We agree.

■ Self-defense is a justification excluding criminal responsibility under Tex. Penal Code Ann. § 9.31 and, as such, is a defense. *Luck v. State*, 588 S.W.2d 371, 375 (Tex.Crim.App.1979), *cert. denied*, 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980). Once a defendant has met his burden of producing sufficient evidence to raise the defense, the State is required to disprove that defense beyond a reasonable doubt. TEX.PENAL CODE ANN. § 2.03(d) (Vernon 1974); *Van Guilder v. State*, 709 S.W.2d 178, 181 (Tex.Crim.App.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986); *Luck v. State*, 588 S.W.2d at 375. Therefore, the State must produce evidence which establishes beyond a reasonable doubt that Appellant did *not act* in self-defense. However, for an appellate court to find as a matter of law that the defendant acted in self-defense, the evidence on that issue must be uncontradicted and no issue thereon presented for the jury's determination. *Jenkins v. State*, 740 S.W.2d 435, 438 (Tex.Crim.App.1987).

■ We find from our review of the record that the State produced no evidence to refute Appellant's claim of self-defense. We find that all of the evidence is uncontradicted and is consistent with self defense.

Appellant testified at the guilt-innocence phase of the trial. He testified that he had invited the deceased over for a drink and after a few drinks on the patio it began to rain and they moved into the living room. The conversation turned to a mutual former girlfriend, Diane Hoge, and the deceased became agitated. Appellant testified that the deceased continued to get more and more belligerent, refused to leave the house although Appellant repeatedly asked him to leave. Appellant continued to ask him to leave and then picked up his pistol from the bedroom. He stated that, "I thought maybe that would convince him to leave, ... and he wouldn't. It just kept getting worse." Appellant was sitting on the loveseat with his pistol in his hand laying on his right leg. He testified the decedent "kept easing toward" him, walking between the other sofa and the coffee table and then suddenly he lunged at Appellant. Appellant continued, "I don't think he meant to come over the coffee table. I think he meant to kick it out of the way, and I can't remember whether he literally kicked it out of the way or in the process of lunging at me that he hit the table with his leg." Appellant estimated that the deceased was about five feet from

him when he lunged and stated that he did not aim the pistol when it fired.

Appellant stated that the deceased was very angry, threatened to kill him and that when the deceased lunged, Appellant was frightened for the safety of his family and himself. He reiterated that he was terribly afraid and his state of mind was "totally fear". When asked why he told people at the scene it was an accident, Appellant responded, "Because I didn't mean to kill him, I didn't want to kill him, and I felt like that if I—when I went and got the gun, I felt like that maybe that would make him leave."

Appellant did not remember when he actually pulled the trigger because "[e]verything happened so fast," but stated he "knew he was close because he was in the process of coming at me ... reaching for me." After the shooting he laid the gun on the coffee table and went to tell his wife to call the police and ambulance.

Officer Johnson, the first officer to arrive at the scene, testified that Appellant related to him the events preceding the shooting. The officer's testimony regarding this oral statement was consistent with Appellant's testimony concerning those events. The officer testified that his impression was that the shooting was an accident.

Officer Peoples, the officer who took Appellant into custody, testified as to Appellant's voluntary statements at the time of his arrest. This officer's testimony was also consistent with all of the other testimony and it also failed to refute the evidence of self-defense.

The paramedic, Richard Hernandez, testified as to his conversation with Appellant and his observations at the scene of the shooting. None of his testimony was inconsistent with Appellant's, nor did it refute the evidence of self-defense.

Ms. Wilker, the crime scene investigator, testified that the gun recovered at the scene had one fired cartridge under the hammer and five unfired rounds. She testified she recovered the gun from the coffee table in Appellant's living room and that the gun had blood on it. She photographed the scene and identified a photograph offered at trial as depicting where a fired bullet went through the ceiling of Appellant's living room with blood spatters around it. She did not attempt to recover the bullet or determine the angle at which it passed through the ceiling. She stated that the bullet hole was "north" of the coffee table, but that she did not make any measurements of the scene. She stated that she did not search the deceased for weapons and did not observe any weapons on or near the body. However, she recalled that the officers who inventoried the deceased's pockets discovered a closed pocketknife in his pocket. She also testified that the entry wound was in the deceased's chest about six inches down from the sternal notch at the midline and the exit wound was in his back about five inches down from the nape of the neck and four inches to the right. Ms. Wilker testified that she noted signs of disorder at the scene: a broken green plastic ashtray with broken fragments near the body; a broken glass on top of the coffee table; one of the legs to the coffee table was laying on the floor underneath the coffee table which was balancing on three legs; and a crushed pack of cigarettes and a glass ashtray or dish lay next to the deceased's foot. She stated that the location of these items was consistent with someone falling into the coffee table or lunging across the coffee table in an attempt to attack someone else.

Mr. Charley Anderson, a police firearms examiner, examined Appellant's weapon and testified that it was a single action revolver and therefore the hammer must be fully cocked in order to fire. He testified that the trigger pull was approximately 2¾ pounds and was considered "light" and not safe to carry around. He explained that with a trigger pull that is under three pounds, you can pull the trigger without having the intent or feeling the pressure. He also stated that the gun had a safety mechanism which had to be in a released position to fire. Mr. Anderson testified that based upon the stippling burns around the entry wound on the deceased's body, he estimated the distance of

the muzzle from the body when the shot was fired to be approximately ten to fifteen inches. He further estimated that if there was fabric between the muzzle of the gun and the target, some of the stippling would be absorbed by the fabric and the distance would be incorrectly indicated by the stippling pattern on the target and would actually be closer than ten to fifteen inches.

Ms. Hilleman, a chemist in the Houston Police Department crime laboratory, testified regarding the report prepared by another chemist in the crime lab. The report was admitted into evidence and indicated that there was a bullet hole in the leg of Appellant's pants and that the weapon used was very close, not in contact, but within one foot of the garment when it was fired; that the garment was stained by lead and powder; that the pattern of the bullet hole showed that it was a "v shaped", "double type hole," indicating that the fabric was folded, that the fabric was not perpendicular to the barrel of the gun and that the hole was in the area of the usual crease in a pair of pants. A photograph that was taken three days after the shooting was introduced into evidence to show the powder burns on Appellant's leg.

The medical examiner, Mr. Jordan, testified that the deceased was killed by a single gunshot fired at close range. He testified the bullet "entered the chest 6½ inches below the sternal notch which is where the collarbones come together in the interior midline, and travelled from front to back, left to right, and head to toe through the heart, through the right lung, the diaphragm . . . and the liver" so that the entry wound was higher than the exit wound. Mr. Jordan testified that the deceased had a blood alcohol level of .347 percent, that the deceased was definitely intoxicated and that a .4 blood alcohol level is usually considered lethal. The medical examiner was asked to participate in an experiment in which he sat in a chair with his legs crossed and an imaginary gun held along his right leg. Defense counsel positioned himself ten inches away from the weapon and bending over him. Mr. Jordan agreed that this scenario would be consistent with the path the bullet took.

Sergeant Doyle, a homicide investigator, testified that he took Appellant's written statement. The statement was admitted into evidence. He also submitted Appellant's pants to the crime lab to determine how far the gun was from his leg when it discharged. Sergeant Doyle testified that they did not take measurements as they normally do at the scene of the shooting because he and the other officers believed that two intoxicated males had an argument and one of them shot the other one in self-defense. When asked if he felt that was as far as they needed to go with the investigation he responded, "At that time that's what we were feeling, yes, sir."

After reviewing all of the record, we hold that the State failed to refute the defense of self-defense. All of the testimony and physical evidence at the trial supported Appellant's claim of self-defense. Appellant had a burn mark on his leg and a bullet hole in his pant leg caused by firing the gun as it lay on his leg. The evidence showed that the deceased was no more than fifteen inches from the muzzle of the gun when he was shot and that he was extremely intoxicated. The bullet passed through the deceased's body in a head to toe direction and hit the ceiling, clearly indicating that the deceased was standing over the seated Appellant when the shot was fired. The shooting occurred in Appellant's home while his wife and children were asleep. Appellant feared for their safety as well as his own. Appellant repeatedly stated in his oral and written statement, and during his testimony at trial, that he had repeatedly asked the deceased to leave his home and that the deceased refused and became increasingly belligerent. Appellant testified that his state of mind was "totally fear" when the deceased lunged at him.

While the deceased did not exhibit a weapon, it was certainly reasonable for Appellant to fear that the deceased intended to carry out his threat to kill Appellant by grabbing the gun when he suddenly lunged at Appellant. All of the evidence indicates Appellant reacted to his reasonable fear

and fired the pistol in self-defense. Appellant's first point of error is sustained.

Our disposition of this point of error renders it unnecessary for us to consider Appellant's remaining points of error.

Accordingly, the judgment of the trial court is reversed and judgment of acquittal is rendered.

JUNELL, Justice, dissenting.

Because I believe that self-defense was a fact issue to be determined by the jury, I respectfully dissent from the decision of the majority.

In this appeal the principal question is whether there is sufficient evidence to support the jury finding beyond a reasonable doubt that appellant did not reasonably believe deadly force was immediately necessary to protect himself against Lathrop's use or attempted use of unlawful deadly force.

In resolving this sufficiency question we view the evidence in the light most favorable to the jury verdict and the trial court's judgment. *McGoldrick v. State*, 682 S.W.2d 573, 577 (Tex.Crim.App.1985); *Collins v. State*, 754 S.W.2d 818 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *Williams v. State*, 710 S.W.2d 828 (Tex. App.—Dallas 1986, pet. ref'd).

A review of the entire record in this case convinces me that there was a fact issue for jury determination concerning whether appellant in fact believed deadly force was immediately necessary to protect himself against Lathrop's use or attempted use of deadly force. Appellant admitted Lathrop had no weapon. Appellant did not testify at trial that Lathrop tried to take the gun away from appellant or even that appellant thought or believed that Lathrop was trying to take the gun away from him when Lathrop lunged at appellant.

More importantly, even if appellant's evidence showed that he believed deadly force was immediately necessary to protect himself against Lathrop's use or attempted use of unlawful deadly force, under the entire record before us I believe that the reasonableness of that belief was a fact issue for the jury's determination.

I would overrule appellant's first point of error; therefore, I respectfully record my dissent.