TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00013-CR







John Uzoagba, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0943429, HONORABLE LARRY FULLER, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of aggravated assault of a police officer. Act of May
22, 1991, 72d Leg., R.S., ch. 334, § 2, 1991 Tex. Gen. Laws 1380, 1381 (Tex. Penal Code Ann.
§ 22.02(a)(2)(A), since amended). The district court assessed punishment at imprisonment for
eight years. Appellant represents himself on appeal after knowingly and voluntarily waiving his
right to counsel.



1.  Accuracy of record.

 We first consider point of error ten, by which appellant complains of inaccuracies
in the record. Appellant's primary complaint is that the court reporter did not record the charge
as it was read by the court to the jury and the statement of facts merely notes parenthetically that
the "Charge of the Court [was] read to the jury." Appellant contends the written charge that
appears in the transcript is not the charge that was read to the jury and also complains that it was
not signed by the court.

 There was no trial objection to the failure of the court to sign the charge, thus
waiving any error. Trammell v. State, 273 S.W. 602, 604 (Tex. Crim. App. 1925); Tex. R. App.
P. 52(a). There was also no objection that the charge read to the jury by the court did not
conform to the charge previously prepared by the court and reviewed by counsel for appellant and
the State. Appellant quotes alleged statements by jurors that certain matters contained in the
printed charge were not read by the court, but these statements are not in evidence. Appellant's
contention that the charge appearing in the transcript is not the charge read to the jury is not
supported by the record before us.

 Appellant complains of other inaccuracies in the record which we will not detail. 
Appellant made no effort to correct the record in the manner prescribed by rule. Tex. R. App.
P. 55. We have considered each alleged inaccuracy and find either that appellant's complaint is
without merit or that the inaccuracy, if any, is irrelevant to the appeal. Point of error ten is
overruled.



2.  Sufficiency of the evidence.

 Appellant is a Nigerian citizen who was, at the time of the offense, living in this
country as a permanent resident alien. Based on a reported conviction for unlawfully carrying a
weapon, officials of the Immigration and Naturalization Service (INS) determined that there was
probable cause to believe that appellant was deportable and an arrest warrant was issued. On the
night of June 6, 1994, two INS agents, Jan Baumgardner and Joe Sanchez, went to appellant's
apartment in Austin to execute the warrant. According to the officers, appellant invited them into
his residence. When told the purpose of the agents' visit, appellant asked to see the warrant. The
agents told appellant they did not have a copy of the warrant with them but that he could examine
it at their office. Appellant informed the agents that he would not go with them. When the agents
attempted to handcuff appellant and take him into custody, he resisted violently. Appellant
slammed Baumgardner into a wall, choked him, and attempted to seize his gun. Baumgardner
escaped from appellant and called for assistance while Sanchez tried to talk appellant into going
with the agents peacefully.

 Austin police officers Peter Niedzialek, Greg Stowers, and Mel Villanueva, each
in uniform, responded to the radioed report that INS agents were in need of assistance. The
officers met Baumgardner outside appellant's apartment. The INS agent's clothes were in disarray
and he was bleeding from cuts near his ear and eye. The agent told the officers what had
happened and that Sanchez remained inside the apartment with appellant. The officers entered
the apartment and found Sanchez and appellant in the bedroom. Appellant was openly belligerent,
shouted obscenities, and demanded that the officers leave. Appellant repeated his vow not to go
with the INS agents.

 A physical struggle again broke out when two of the police officers attempted to
frisk appellant for weapons. Seeking to subdue the now-enraged appellant, Stowers sprayed him
with pepper mace. The officer testified that this had little effect on appellant, but portions of the
chemical also hit Villanueva, disabling him. Niedzialek and Stowers continued to wrestle with
appellant in an effort to handcuff him. During the course of this struggle, appellant repeatedly
kicked Niedzialek. One of these blows struck the officer's leg with such force that he briefly
thought his knee had "blown." A photograph of Niedzialek's leg taken later that night, showing
a contusion on the shin, was admitted in evidence. Niedzialek testified that in order to subdue
appellant, he struck appellant's calf with his flashlight and grabbed appellant's testicles. He and
Stowers also applied force to certain "pressure points" on appellant's body. The officers
eventually succeeded in applying handcuffs to appellant's arms and flex cuffs to his legs, after
which he was taken into custody.

 In his own testimony, appellant denied inviting the INS agents into his apartment. 
Appellant stated that the agents failed to identify themselves when they came to his door, forced
their way into the apartment with pistols drawn, and immediately threw him to the floor. 
Although appellant offered no resistance, the agents repeatedly kicked him in the ribs. Appellant
further testified that when the Austin police officers arrived, they immediately sprayed him with
pepper mace and forced him to the floor. Appellant said that the spray left him disoriented and
unable to see or breathe. Appellant denied resisting the officers at any time and said that if he
kicked the officer it was an accident.

 In order to convict appellant of aggravated assault, the jury was required to find
beyond a reasonable doubt that he "intentionally, knowingly or recklessly cause[d] bodily injury
to Peter Niedzialek, a peace officer, by then and there kicking [the complainant] in the shin while
[the complainant] was lawfully discharging an official duty and when [appellant] knew or had been
informed that the said [complainant] was a peace officer . . . ." The district court also charged
the jury on the use of force by a police officer in making an arrest and on the use of force to resist
an arrest. Tex. Penal Code Ann. §§ 9.31(c), 9.51(a) (West 1994). (1) The court instructed the jury
to acquit appellant if it believed or had a reasonable doubt that appellant acted in justifiable self-defense.

 In points of error nine and twelve, appellant asserts that the evidence is legally
insufficient to sustain the jury's verdict. This contention presents the question whether a rational
trier of fact, viewing all the evidence in the light most favorable to the verdict, could have found
the essential elements of the charged offense beyond a reasonable doubt and also could have found
beyond a reasonable doubt that appellant was not acting in justifiable self-defense. Jackson v.
Virginia, 443 U.S. 307 (1979); Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

 With respect to the elements of the offense, appellant argues that Niedzialek's
testimony regarding the injury to his leg was contradictory and uncorroborated by the other
officers, that the photograph of the officer's leg was a hoax, and that he could not have possessed
the requisite mental state because of the effects of the pepper mace. (2) As to the self-defense issue,
appellant characterizes the actions of the officers as "torture" and asserts that they clearly intended
to kill him.

 The jury was the exclusive judge of the weight and credibility of the testimony and
other evidence. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). The jury was free to
accept or reject the defensive testimony. Saxton, 804 S.W.2d at 914. There is nothing in the
record to support appellant's assertion that the officers lied or manufactured evidence. When the
evidence is viewed in the light most favorable to the verdict, a rational trier of fact could find
appellant guilty of aggravated assault of a police officer. Point of error nine is overruled.

 Point of error twelve also urges that the jury's verdict was against the great weight
and preponderance of the evidence. We construe this as a challenge to the factual sufficiency of
the evidence. When conducting a factual sufficiency review, we do not view the evidence in the
light most favorable to the verdict. Instead, we consider all the evidence equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. Orona v. State, 836
S.W.2d 319 (Tex. App.--Austin 1992, no pet.). We will set aside a verdict for factual
insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as
untimely filed); see Clewis v. State, No. 450-94 (Tex. Crim. App. Jan. 31, 1996) (adopting Stone
test).

 Viewing all the evidence equally, including appellant's defensive testimony, we do
not find the jury's verdict to be so contrary to the overwhelming weight of the evidence as to be
clearly wrong or unjust. Point of error twelve is overruled.



3.  Legality of arrest.

 Appellant contends that he was not deportable because his misdemeanor conviction
for unlawfully carrying a weapon, which was not final, was not a "conviction" within the meaning
of applicable federal statutes and regulations (point of error two). Appellant therefore urges that
the actions of the INS agents on the night in question violated his rights to privacy and due
process of law (points one and thirteen). Appellant further contends that the district court erred
by overruling his motion to suppress based on the agents' alleged unlawful conduct (points three,
four, and five) and by refusing various requested jury instructions regarding this unlawful conduct
(points six, seven, and seventeen).

 Appellant's argument under all of these points of error can be summarized as
follows: He was not deportable under federal law, therefore the INS arrest warrant was unlawful,
therefore the INS agents entered his apartment unlawfully, therefore the Austin police officers
who responded to the call for assistance were not lawfully discharging an official duty, and
therefore he was not guilty of assaulting a police officer. This argument fails because the legality
of the arrest is irrelevant to the question whether the officers were lawfully discharging an official
duty. Hughes v. State, 897 S.W.2d 285, 297-98 (Tex. Crim. App. 1994); Montoya v. State, 744
S.W.2d 15, 29 (Tex. Crim. App. 1987). A police officer making an unlawful arrest is lawfully
discharging an official duty so long as he is acting within his capacity as a police officer. 
Montoya, 744 S.W.2d at 29. It is no defense to a charge of aggravated assault on a police officer
that the officer was attempting to arrest the defendant unlawfully. Salazar v. State, 643 S.W.2d
953, 956 (Tex. Crim. App. 1983); Gonzalez v. State, 574 S.W.2d 135 (Tex. Crim. App. 1978). 
For this reason, points of error one, two, and thirteen are overruled.

 Appellant requested special jury instructions explaining when a police officer is
authorized to effect a warrantless arrest. Tex. Code Crim. Proc. Ann. arts. 14.01, .02, .03, .04,
.05 (West 1977 & Supp. 1996). As he did at trial, appellant argues that he was entitled to these
instructions because fact issues had been raised as to whether the INS agents were lawfully
authorized to arrest him. As previously discussed, the legality of the arrest was irrelevant to
appellant's guilt. Point of error seven is overruled.

 Appellant moved to suppress all "observations, opinions, and evidence" resulting
from the allegedly unlawful actions of the INS agents. Appellant also requested that the jury be
instructed to disregard any evidence it found to be obtained unlawfully. Tex. Code Crim. Proc.
Ann. art. 38.23(a) (West Supp. 1996). Appellant asserts that all testimony regarding his conduct
on the night in question should have been suppressed because neither the INS agents nor the
Austin police officers were legally authorized to arrest him. But just as appellant could not assert
the alleged illegality of the arrest as a justification for his assault of the officer, neither could he
assert the illegality of the arrest as a ground to suppress all evidence of the assault. Points of
error three, four, five, and six are overruled.

 Finally, appellant contends the district court should have instructed the jury to
acquit him if it found that the officers were not acting in the lawful discharge of an official duty. 
Appellant again mistakenly assumes that the claim that he was unlawfully arrested raised an issue
as to whether the officers were lawfully discharging their duty. In any event, the court's charge
required the jury to find beyond a reasonable doubt that Officer Niedzialek was lawfully
discharging an official duty in order to convict appellant of aggravated assault. This was adequate
to protect appellant's rights. It was not necessary to submit a separate instruction negating this
element of the offense. Moore v. State, 736 S.W.2d 682, 684 (Tex. Crim. App. 1987); Sanders
v. State, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986). Point of error seventeen is overruled.



4.  Additional charge error.

 The court's charge contained the Penal Code definitions of "intentionally,"
"knowingly," and "recklessly." Tex. Penal Code Ann. § 6.03(a), (b), (c) (West 1994). Appellant
asserts that aggravated assault of a police officer is a "result of conduct" offense and that the
district court erred by failing to limit the definitions of the culpable mental states to the result of
appellant's conduct. Cook v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); Sneed v.
State, 803 S.W.2d 833, 835 (Tex. App.--Dallas 1991, pet. ref'd).

 The indictment alleged, in conformity to former section 22.02(a)(2)(A) of the Penal
Code, that appellant "intentionally, knowingly, and recklessly cause[d] bodily injury to Peter
Niedzialek a peace officer" while the officer was lawfully discharging an official duty and that
appellant "knew or had been informed that [the officer] was a peace officer." We agree that
aggravated assault contains a "result of conduct" element. In this cause, however, it also was
necessary for the State to prove that appellant knew or had been informed that the complainant
was a peace officer. Thus, the charged offense contained both a "circumstances of conduct"
element and a "result of conduct" element, the holding in Sneed to the contrary notwithstanding. 
See Hughes v. State, 897 S.W.2d 285, 294-95 (Tex. Crim. App. 1994) (capital murder of peace
officer, as defined by Tex. Penal Code Ann. § 19.03(a)(1), contains both "result of conduct" and
"circumstances of conduct" elements). Because the statutory definition of "recklessly" is limited
to the circumstances and result of the actor's conduct, the court did not err by giving the full
statutory definition. Penal Code § 6.03(c).

 The statutory definitions of "intentionally" and "knowingly" apply these terms to
the nature of the actor's conduct as well as to the circumstances and result of the conduct. Id. §
6.03(a), (b). Because aggravated assault of a police officer does not appear to have a "nature of
conduct" element, we conclude that the court should have deleted the "nature of conduct"
language when it defined "intentionally" and "knowingly" in its charge. Since appellant did not
object to the charge on this ground, the error requires reversal only if it caused egregious harm. 
Cook, 884 S.W.2d at 491-92; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(opinion on rehearing).

 In assessing the harm resulting from the inclusion of improper conduct elements
in the definitions of culpable mental states, we may consider the degree to which the culpable
mental states were limited by the application portion of the charge. Hughes, 897 S.W.2d at 296. 
The application paragraph in this cause authorized appellant's conviction for aggravated assault
only if the jury found that he "intentionally, knowingly, or recklessly cause[d] bodily injury" to
the complainant. The terms "intentionally" and "knowingly" directly modify the phrase "cause
bodily injury." Referring to the definitions of "intentionally" and "knowingly," it is obvious that
the "result of conduct" portions apply. Likewise, the application paragraph required a finding that
appellant "knew or had been informed that the said [complainant] was a peace officer." Referring
to the definition of "knowingly," it is obvious that the "circumstances of conduct" portion applies. 
Because the application paragraph pointed the jury to the proper portions of the definitions, no
harm resulted from the court's failure to limit the definitions of "intentionally" and "knowingly"
to the result and circumstances of conduct. Id. at 296. Point of error eighteen is overruled.



5.  Jury misconduct.

 One of the venire members summoned in this cause, Robert Chapman, did not
respond to the summons. Instead, his wife, Lisa Jane Chapman, appeared and eventually was
chosen to serve on the jury. This irregularity was not discovered until after the jury was sworn
and testimony began. It is unclear from Chapman's response to questions by the court whether
she mistakenly believed the jury summons was addressed to her or she intentionally appeared in
her husband's place. It is undisputed that neither the parties nor the court were aware of this
irregularity until it was discovered during trial by a deputy clerk. Appellant moved for a mistrial
on the ground that the juror had not been summoned for jury duty. The motion was overruled,
which is the subject of appellant's eleventh point of error. 

 To successfully challenge a criminal conviction based on noncompliance with jury
selection procedures, a defendant must demonstrate that such noncompliance compromised the
fairness of his trial. Cooks v. State, 844 S.W.2d 697, 726-27 (Tex. Crim. App. 1992); Lewis v.
State, 815 S.W.2d 560, 563 (Tex. Crim. App. 1991). Lisa Jane Chapman does not appear to
have been disqualified for jury service and appellant does not contend that she was. Tex. Code
Crim. Proc. Ann. art. 35.19 (West 1989); Tex. Gov't Code Ann. §§ 62.102, .105 (West 1988
& Supp. 1996). Appellant does not assert that Chapman was biased or otherwise challengeable
for cause, or that she engaged in misconduct during deliberations. Appellant argues that
Chapman's actions denied him a randomly chosen jury panel, but on this record the process was
no less random because Lisa Chapman appeared instead of her husband. Because this irregularity
in the jury selection process has not been shown to have compromised the fairness of appellant's
trial, we conclude that no reversible error is presented. Point of error eleven is overruled.

 In point of error fifteen, appellant contends misconduct occurred during jury
deliberations. He relies on an affidavit by Jacqueline Simmons, the jury forewoman. This
affidavit is attached to appellant's reply brief and is therefore not part of the appellate record. 
Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981). Nevertheless, we have examined
the affidavit, in which Simmons states that she believed appellant was innocent but voted to
convict because the other jurors believed him guilty and would not change their minds. The
affidavit does not describe an act of jury misconduct, but merely attempts to impeach the verdict
by explaining the juror's mental processes. Hernandez v. State, 774 S.W.2d 319, 325 (Tex.
App.--Dallas 1989, pet. ref'd). Point of error fifteen is overruled.



6.  Prosecutorial misconduct.

 Appellant's eighth point of error asserts that there was a conspiracy to unlawfully
deport him; that the INS agents, Austin police officers, prosecutors, and defense counsel were part
of this conspiracy; and that the State "premised its case on fraud, inventive [sic] evidence and
concealment of material facts." The nineteenth point of error continues this theme, urging that
"the prosecution sustained its case through fraud and use of perjured testimony, violated
prosecutorial duty to seek justice, made improper argument to the jury, and replaced documents." 
Appellant's argument under these points of error merely asserts the existence of this conspiracy,
with a few record references to actions that can be interpreted as supporting the existence of the
presupposed conspiracy. Viewed objectively, however, the record does not support appellant's
claims. In particular, we find no evidence that any agent of the State concealed material evidence,
suborned perjury, altered the record, or otherwise engaged in misconduct calculated to unjustly
secure appellant's deportation or conviction. Points of error eight and nineteen are overruled.



7.  Ineffective assistance of counsel.

 In point of error fourteen, appellant asserts that he received ineffective assistance
of counsel at trial. To prevail on this claim, appellant must show that counsel made such serious
errors that he was not functioning effectively as counsel and that these errors prejudiced the
appellant's defense to such a degree that he was deprived of a fair trial. Strickland v. Washington,
466 U.S. 668 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); and see
Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); O'Hara v. State, 837 S.W.2d
139, 143 (Tex. App.--Austin 1992, pet. ref'd). In reviewing this point, we must indulge a strong
presumption that counsel's conduct fell within the wide range of reasonable professional
assistance. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

 Appellant complains that counsel introduced harmful evidence, including evidence
of an extraneous offense committed by appellant. This is a reference to an INS document with
which counsel sought to undermine the claim that appellant was deportable. The admission of
these documents was consistent with appellant's defensive strategy. We also note that during his
testimony, appellant expressed the desire to testify regarding his previous conviction for
unlawfully carrying a weapon. Appellant cannot blame counsel for his own decisions.

 Appellant also contends counsel engaged in "unethical coaching, threats and
sabotage." Specifically, appellant claims that counsel misrepresented the seriousness of the
charges against him, pressured him to plead guilty, tricked him into waiving jury sentencing,
refused to obtain the removal of a juror who was "eyeballing" appellant, and deliberately typed
the wrong cause numbers on documents in order to hide errors. Appellant further contends that
counsel failed and refused to investigate the facts, request discovery, or otherwise prepare for
trial, refused to secure the presence of defense witnesses or to disclose the names of the witnesses
to whom he spoke, and deliberately sabotaged appellant's defense by conceding facts and by
failing to effectively cross-examine the State's witnesses. There is no support in the record for
any of these contentions.

 Finally, appellant asserts that counsel "purposely suppressed appellant's claim of
civil conspiracy and conspiratorial objectives." In the absence of any record evidence that such
a conspiracy existed, appellant has not demonstrated that counsel was ineffective because he failed
to pursue this claim at trial. 

 Appellant has failed to prove that counsel was functioning ineffectively at trial. We
overrule point of error fourteen.



8.  Motion for new trial hearing.

 Appellant contends the district court erred by failing to conduct a hearing on his
motion for new trial. If a motion for new trial properly raises matters that are not determinable
from the record, the trial court abuses its discretion if it fails to conduct a hearing on the motion. 
Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). A hearing is not required if the
matters raised in the motion are capable of being determined from the trial record. Id. As a
prerequisite to obtaining a hearing, the motion for new trial must be supported by an affidavit of
the defendant or some other person showing reasonable grounds that would entitle him to a
hearing on the motion. Jordan v. State, 883 S.W.2d 664 (Tex. Crim. App. 1994); McIntire v.
State, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985).

 Appellant's original pro se motion for new trial was neither verified nor supported
by affidavit. Appellant later filed a verified amended motion for new trial, while a second
amended motion was filed by appellate counsel. Counsel's motion alleged, among other things,
that Lisa Chapman's appearance in response to her husband's jury summons denied appellant his
"right to trial by a randomly selected jury of his peers" and his "right to challenge the array based
on an absent venireman." The motion was supported by affidavits from trial counsel and the
deputy clerk reciting the facts, otherwise shown in the record, that Lisa Chapman responded to
Robert Chapman's jury summons and was selected and sworn as a juror, and that appellant's
motion for mistrial was overruled. Because this ground for new trial was not based on facts
outside the record, the district court did not abuse its discretion by failing to conduct a hearing
on the issue.

 Counsel's motion for new trial also alleged that trial counsel was ineffective and
that the overruling of appellant's motion for continuance denied him a fair trial. Neither of these
conclusory allegations was supported by affidavit. The motion did, however, incorporate by
reference the allegations previously made in appellant's verified pro se amended motion for new
trial. We have looked to the latter document to determine if the facts stated therein are sufficient
to require a hearing regarding either the effectiveness of counsel or the denial of the continuance.

 Appellant's pro se amended motion for new trial contained no recitals of fact to
support the conclusion that the district court denied him a fair trial by overruling his motion for
continuance. The court did not abuse its discretion by failing to conduct a hearing on that issue.

 Trial counsel's alleged ineffectiveness was addressed at length in appellant's pro
se amended motion for new trial. Many of the matters raised by appellant in the motion related
to counsel's actions at trial and therefore were reflected in the trial record, such as the failure to
voice a particular objection or the offering of a particular exhibit in evidence. Although the
amended pro se motion also asserted matters that were outside the record, such as counsel's
alleged failure to investigate or call available witnesses, these allegations were conclusory in
nature and did not put the district court on notice that reasonable grounds existed to believe
counsel's representation might have been ineffective. Jordan, 883 S.W.2d at 665. The district
court has not been shown to have abused its discretion by failing to conduct a hearing on the
ineffective assistance of counsel allegations.

 Appellant also urges that he was entitled to a hearing on other matters stated in his
pro se amended motion for new trial, such as the alleged conspiracy that existed against him and
the unlawful nature of the INS deportation proceedings. These allegations were not contained in
counsel's motion for new trial. Appellant was not entitled to hybrid representation. Landers v.
State, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977). The district court was not required to
consider pro se motions filed while appellant was represented by counsel. Hazelwood v. State,
838 S.W.2d 647, 649 (Tex. App.--Corpus Christi 1992, no pet.); Busselman v. State, 713 S.W.2d
711, 714 (Tex. App.--Houston [1st Dist.] 1986, no pet.). There is no showing that appellant's pro
se amended motion for new trial was presented to the district court except as it was referenced in
counsel's motion. No abuse of discretion is shown under the circumstances. Point of error
sixteen is overruled.

 The judgment of conviction is affirmed.


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: June 12, 1996

Do Not Publish

1.   The current code provisions are substantively identical to those in effect at the time of
the offense.
2.   Appellant also urges that Niedzialek was not shown to be acting in the lawful discharge
of his duties. We reject this contention in our discussion of points of error one through eight.


n v. State, 883 S.W.2d 664 (Tex. Crim. App. 1994); McIntire v.
State, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985).

 Appellant's original pro se motion for new trial was neither verified nor supported
by affidavit. Appellant later filed a verified amended motion for new trial, while a second
amended motion was filed by appellate counsel. Counsel's motion alleged, among other things,
that Lisa Chapman's appearance in response to her husband's jury summons