Stephen Warren DAWKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10-91-008-CR.

Court of Appeals of Texas,
Waco.

Dec. 11, 1991.

B. Dwight Goains, Waco, Walter M. Reaves, Jr., West, for appellant.

Dan V. Dent, Dist. Atty., West, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Stephen Warren Dawkins appeals his conviction of felony driving while intoxicated. He was found guilty by a jury and assessed punishment at twenty years in prison and a $5,000 fine. Dawkins complains of the admission of a videotape showing his refusal to submit to sobriety tests. He also complains of testimony and argument regarding six prior arrests for driving while intoxicated and of jury misconduct involving a discussion of the parole law. We will affirm the judgment.

On March 23, 1990, Dawkins was stopped by John Comer, a Hillsboro police officer, for a traffic offense. Comer noticed a strong odor of alcohol as he approached Dawkins' car. After Dawkins stepped out of his car, Comer observed several signs of intoxication, including slurred speech, incoherence, and the use of his car door as a rest. As a result of Comer's observations, he asked Dawkins to submit to several field sobriety tests, including an eye nystagmus test designed to measure the extent to which his eyes jerked as they followed an object moving from one side of his field of vision to the other. Comer also required Dawkins to recite the alphabet and to count from one to thirty-five and from thirty-five back to one. When he was unable to satisfactorily perform the field sobriety tests, Dawkins was arrested for driving while intoxicated and asked to submit to a breath test to analyze his blood-alcohol concentration.

After Dawkins consented to the breath test, he was transported to the Hill County Law Enforcement Center, where the Hill County Sheriff's Department intoxilyzer instrument was located. Warren Kiel, a state trooper for the Texas Department of Public Safety, attempted to administer the test, but Dawkins refused to blow hard enough or long enough for the instrument to produce a reading on his blood-alcohol concentration. After Comer completed the paperwork for a breath-test refusal, he asked Dawkins to submit to several more sobriety tests while being videotaped. He refused.

Comer then began videotaping, advised Dawkins of his right to refuse to submit to further sobriety tests on videotape, and recorded his refusal. The videotape, which was admitted into evidence over Dawkins' objection, recorded the following conversation between Comer and Dawkins:

Q: Look at the camera. You ready? Okay. State your full name.

A: Stephen Warren Dawkins. I was born in 1959, 11–22.

Q: Okay. What I want you to do, if you'll stand up here. Stand up here. Do you want to take the video?

A: Well, if Billy Wickman is going to come get me out, do I have to do all that?

Q: If you don't want to take—

A: I done confessed to what you said.

Q: Okay. If you don't want to take it, look in the camera and tell me, just state that I refuse to take the video.

A: I told John I refuse to take the video, and I accept the charges he set on me.

Q: Okay.

A: All right. Is that cool, John?

Q: That's cool. Have a seat.

A: And I want to leave tonight.

■ In point one, Dawkins contends that the court erred in admitting the videotape

of his refusal to submit to the sobriety tests requiring him to recite the alphabet and to count aloud. Dawkins argues that, because the requested sobriety tests sought testimonial evidence, his right to be free from self-incrimination was violated by admitting the videotape into evidence. Comer testified that Dawkins was unable to satisfactorily perform the alphabet test and the counting test which Comer conducted in the field. However, Dawkins does not complain of Comer's testimony describing the sobriety tests requested, attempted, or actually performed. Instead, Dawkins complains of the admission of the videotape into evidence. Because neither Dawkins' poor performance nor Comer's request for Dawkins to reattempt the alphabet test or the counting test was portrayed on the videotape, point of error one is overruled. The evidence of Dawkins' refusal to submit to the sobriety tests is considered in point two.

■ In point two, Dawkins contends that the court erred in admitting the videotape because it portrayed his refusal to submit to the sobriety tests in violation of his right to be free from self-incrimination. The only statement on the videotape which was made by Dawkins in response to Comer's request was, "I refuse to take the video." Therefore, we must determine if evidence of Dawkins' refusal to submit to further sobriety tests on videotape violated the fifth and fourteenth amendments to the United States Constitution or article 1, section 10, of the Texas Constitution. Because Dawkins' refusal to submit to the sobriety tests on videotape involved no impermissible coercion, evidence of Dawkins' refusal did not violate his right to be free from self-incrimination. *See Barraza v. State,* 733 S.W.2d 379, 381 (Tex.App.—Corpus Christi 1987), *aff'd per curiam,* 790 S.W.2d 654 (Tex.Crim.App.1990) (citing *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 921–22, 74 L.Ed.2d 748 (1983)). Absent evidence that Dawkins was compelled to refuse to perform the field sobriety tests, evidence of his refusal was admissible. *See Barraza,* 733 S.W.2d at 381 (citing *Thomas v. State,* 723 S.W.2d 696,

704 (Tex.Crim.App.1986) (defining "compulsion")).

Dawkins relies upon the holding of the United States Supreme Court in *Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), to support his contention that evidence of his refusal to submit to the alphabet test and the verbal count test on videotape violated the privilege against self-incrimination. According to the Court in *Muniz,* the privilege against self-incrimination consists of a "testimonial" component and a "compulsion" component. *Id.* 110 S.Ct. at 2644. In *Muniz,* the Court did not explore the outer boundaries of what is "testimonial" because its decision focused on the "compulsion" component. *Id.* at 2647.

■ According to the Court, the major thrust of the policies undergirding the privilege is to prevent the use of legal compulsion to extract from the accused a sworn communication of facts which would incriminate him. *Id.* The privilege reflects the Court's fierce "unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury, or contempt." *Id.* A suspect is compelled to be a witness against himself whenever he must face the modern-day analog of the historic trilemma—either during a criminal trial where a sworn witness faces the identical three choices, or during custodial interrogation where the choices are analogous and hence raise similar concerns. *Id.* at 2647–48.

■ Whenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the "trilemma" of truth, falsity, or silence, and, therefore, the response (whether based on truth or falsity) contains a testimonial component. *Id.* at 2648. When, however, the requested response is nontestimonial, the suspect is not confronted with this trilemma. *Id.*

The Court in *Muniz* held that a sobriety test which required the suspect to calculate the date of his sixth birthday required a testimonial response and should have been suppressed as a violation of his *Miranda*

rights.[1] *Id.* at 2649. However, the Court pointed out that it was not required to decide "whether Muniz's counting (or not) itself was 'testimonial' within the meaning of the privilege." *Id.* at 2651, n. 17. Because the United States Supreme Court has expressly left the question undecided, we must rely upon the current authority of the Texas Court of Criminal Appeals. In *Jones v. State*, 795 S.W.2d 171 (Tex.Crim.App. 1990), the court held that audio tracks from DWI videotapes should not be suppressed unless the police conduct depicted expressly or impliedly calls for a testimonial response not normally incident to arrest and custody or is conduct the police should know is reasonably likely to elicit such a response. *Id.* at 176. In *Chadwick v. State*, 795 S.W.2d 177 (Tex.Crim.App.1990), the court affirmed the court of appeals' opinion which concluded that "a recitation of the alphabet and counting backward are not testimonial in nature because these communications are physical evidence of the functioning of appellant's mental and physical faculties." *Id.* Because the requested sobriety tests did not require a testimonial response—neither counting nor reciting the alphabet involves an express or implied assertion of fact or belief—Dawkins was not confronted with the "cruel trilemma." Therefore, his refusal to submit to further sobriety tests was not compelled in violation of his right to be free from self-incrimination. Point of error two is overruled.

In point three, Dawkins contends that the court erred in denying his motion for mistrial after Comer testified that Dawkins had been previously arrested on six occasions. On cross-examination, after the videotape was presented to the jury, Comer testified as follows:

Q: How do you explain that video?
A: Explain what?
Q: He said he'd done everything you asked me to do, and I want to get out

of here tonight. I want to make bond, get out. That was true, wasn't it?
A: Yes.

．　　．　　．　　．　　．

Q: Do you recall seeing the video? You were there?
A: Yes, sir.
Q: And you were pushing him and you said: Now, if you're going to refuse to take these tests, I want you to take it before the camera? You recall that?
A: No, sir. The main concern of Mr. Dawkins was that this was his sixth arrest for D.W.I., and that he was going to have to go back to the pen for it. And his question to—
Q: Did I ask you that question?
A: You asked me to explain the video.
Q: All right.
[DAWKINS' ATTORNEY]: I move for mistrial, Your Honor.
THE COURT: Overruled.

Dawkins' counsel then proceeded with the cross-examination without a timely objection to the testimony. Nor did he request a jury instruction to disregard the testimony. Regardless of whether Dawkins opened the door to Comer's testimony, Dawkins waived any complaint by failing to request an instruction. *See Watkins v. State*, 572 S.W.2d 339, 343–44 (Tex.Crim.App. [Panel Op.] 1978). Generally, testimony referring to or implying extraneous offenses allegedly committed by the defendant is rendered harmless by the court's instruction to disregard. *Id.* at 344. We find no error in the court's refusal to grant a mistrial. Point of error three is overruled.

In point four, Dawkins contends that the court erred in overruling his objection to the state's final argument during the guilt-innocence phase when the prosecutor referred to six prior arrests for driving while intoxicated. During final argument, the prosecutor made the following argument:

---

**1.** The Supreme Court held that, because Muniz was not advised of his *Miranda* rights until after the videotaped proceedings were completed, any verbal statements that were both "testimonial" in nature and elicited during custodial interrogation should have been suppressed. *Muniz,*

110 S.Ct. at 2644. Although Dawkins admits that he had been advised of his *Miranda* rights prior to the videotape, we must also address the "compulsion" component of the privilege against self-incrimination.

Mr. McGregor [Dawkins' counsel] also talked about, well, that this particular individual was a marked man in Hillsboro. I would point out to you I think there was testimony of something like six D.W.I.'s. I would say that might not be too bad a situation, if somebody lives here in your city and has been stopped six times before for D.W.I.

[DAWKINS' ATTORNEY]: I object to counsel arguing about six D.W.I.'s. He knows full well that is improper, and move for mistrial.

THE COURT: Overruled.

■ Proper jury argument falls within one of the following categories: (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4) a plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973). As previously discussed, evidence of the six prior arrests was admitted without objection or a motion to strike. Because the complained-of remarks by the prosecutor during final argument were about statements in evidence, no error is presented as a result of the court's failure to grant a mistrial. *See Johnson v. State,* 504 S.W.2d 493, 495 (Tex.Crim.App.1974). Furthermore, Dawkins' counsel made the following argument prior to the prosecutor's closing argument:

In [Comer's] report he admitted, said, well, I gave him the tests, but he flunked them. In whose mind did he flunk? The guy that had already made up his mind. Now, what did the wife say? Hillsboro Police Department knew his car and they followed him around everywhere. *All these convictions,* Hillsboro P.D. All power corrupts; absolute power, absolute.

(Emphasis added).

The prosecutor's argument was a reasonable answer to Dawkins' argument that the police "followed him around everywhere" as a result of his prior convictions. Because the prosecutor's argument was not improper, point of error four is overruled.

In point five, Dawkins contends that the court erred in restricting his cross-examination of jurors at the hearing on his motion for new trial. Rule 606(b) of the Texas Rules of Criminal Evidence provides:

(b) **Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify as to any matter relevant to the validity of the verdict or indictment. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

TEX.R.CRIM.EVID. 606(b).

Two courts of appeals have concluded that the law in the area of jury misconduct was not changed by Rule 606(b). *See Hernandez v. State,* 774 S.W.2d 319, 325 (Tex. App.—Dallas 1989, pet. ref'd); *Buentello v. State,* 770 S.W.2d 917, 919 (Tex.App.—Amarillo 1989, pet. granted). However, the Texas Court of Criminal Appeals recently criticized the First Court of Appeals for relying upon caselaw predating the effective date of the Rules of Criminal Evidence. *See Lee v. State,* 791 S.W.2d 141, 142 (Tex. Crim.App.1990). The court in *Lee* remanded the case in order for the court of appeals to determine the admissibility under Rule 606(b) of the presiding juror's testimony about jury misconduct. *Id.* Therefore, we must determine whether the excluded testimony was "relevant to the validity of the verdict or the indictment."

■ A matter is relevant to the validity of the verdict or the indictment if it concerns an overt act which constitutes jury misconduct under Rule 30(b) of the Texas Rules of Appellate Procedure. *Brown v. State,* 804 S.W.2d 566, 569 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); TEX.R.APP.P. 30(b). Furthermore, a juror may testify to the fact that the impermissible conduct occurred, but may not tes-

tify to the actual content of the statement or statements constituting the impermissible conduct. *Hernandez*, 774 S.W.2d at 325. The court in *Hernandez* held that the jury's discussion of the parole laws, if any, constituted an overt act which the Court of Criminal Appeals did not intend for Rule 606(b) to exclude. *See id.* at 325–26. Furthermore, we have previously held that a juror's testimony regarding a discussion of the parole law during jury deliberations, which was preserved in a bill of exception, was relevant to the validity of the verdict. *See Reese v. State*, 772 S.W.2d 288, 290–91 (Tex.App.—Waco 1989, pet. ref'd).

■ At the hearing on his motion for new trial, Dawkins sought to ascertain what effect an alleged discussion of parole evidence had on the jurors' deliberations. On several occasions the court sustained the state's objections to Dawkins' examination of the jurors. However, Dawkins failed to make an offer of proof as required by Rule 103(a)(2) of the Texas Rules of Criminal Evidence. TEX.R.CRIM.EVID. 103(a)(2). Therefore, we are unable to determine the relevance of the excluded evidence. Because no complaint related to the excluded evidence was preserved for appeal, we overrule point of error five.

In point six, Dawkins contends that the court erred in denying his motion for new trial because the jurors discussed the parole law. At Dawkins' motion for new trial, Juror Bixby, who had served as a Hill County jailer for five months, testified that one other juror asked her how long Dawkins would have to serve his sentence. Bixby testified as follows:

A: I said that *I was not for sure exactly what he would serve,* but that, when I was a jailer at Hill County Sheriff's Department in February, that they were getting—they were serving 28 days per year.

Q: And that would figured out about 20 months on a 20 year sentence?

A: I guess so. I didn't state that.

Q: I know you didn't, but I mean that is what the jury figured out and discussed?

A: Well, I don't remember that.

Q: Now then, Mrs. Bixby, did not you tell them that he would not have to serve all of his sentence?

A: I said that most inmates, or whatever, don't spend their whole time down there, *but that's common knowledge. Everyone knows that.*

(Emphasis added).

■ Since the possibility of parole is a matter of common knowledge, the mere discussion by jurors of the parole laws, without more, is not jury misconduct that denies the accused of a fair and impartial trial. *Benitez v. State*, 733 S.W.2d 395, 397 (Tex.App.—Fort Worth 1987, pet. ref'd).

■ Juror Whittington testified that the discussion of how long Dawkins would have to serve took place after the twenty-year sentence was determined. Jurors Kolar and Pyatt also testified that the discussion of parole law took place after the sentence was agreed upon.

A jury's discussion of the parole law constitutes reversible error if there was:

(1) a misstatement of the law,

(2) asserted as a fact,

(3) by one professing to know the law,

(4) which is relied upon by other jurors,

(5) who for that reason changed their vote to a harsher punishment.

*Sneed v. State*, 670 S.W.2d 262, 266 (Tex. Crim.App.1984).

■ The testimony given at the hearing on Dawkins' motion for new trial fails to show that any misstatement of the law was made by a juror professing to know the law. Furthermore, the record fails to show that the jurors relied on any discussion of the parole laws in voting for a harsher punishment. Dawkins argues that he was unable to establish the fifth *Sneed* factor only because of the trial court's action in limiting his questioning of the jurors. *See id.* However, as previously discussed in point five, Dawkins failed to make an offer of proof as required by Rule 103(a)(2) of the Texas Rules of Criminal Evidence, and therefore, no complaint related to the excluded evidence was preserved for appeal.

TEX.R.CRIM.EVID. 103(a)(2). We hold that the trial court did not err in denying Dawkins' motion for new trial. Point of error six is overruled.

The judgment is affirmed.