Overman v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00682-CR







Patrick J. Overman, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY


NO. 405261, HONORABLE WILFRED AGUILAR, JUDGE PRESIDING







 A jury convicted appellant of driving while intoxicated. See Tex. Penal Code Ann. § 49.04
(West 1994 & Supp. 1997). Appellant contends in nine points of error that the trial court erred in denying
his motion to suppress a DWI videotape that (1) reveals to the jury appellant invoking his right to counsel
and his right to remain silent and (2) depicts testimony of appellant resulting from custodial interrogation. 
In a related point of error, appellant contends the trial court erred by allowing the prosecutor to argue to
the jury that they could consider appellant's refusal to perform field sobriety tests on the video as evidence
of guilt. We will overrule appellant's points of error and affirm the judgment of the trial court.


BACKGROUND At approximately 1:20 a.m. on the morning of November 4, 1993, appellant, Patrick Jay
Overman, was driving westbound on West Sixth Street in Austin, Texas. At the intersection of West Sixth
Street and West Lynn, appellant drove through a flashing red signal light without stopping. Officer Samuel
Ramirez and Police Cadet Vincent Hernandez, who were observing the intersection in a marked Austin
police car, followed appellant and stopped him. The officers smelled a moderate odor of alcohol on
appellant's breath, noticed that his speech was slightly slurred, and asked him to perform several field
sobriety tests. Appellant performed the tests poorly, and the officers arrested him for driving while
intoxicated. At the police station, the officers videotaped an interview with appellant. During the
videotape, appellant invoked both his right to counsel and his right to remain silent and refused to attempt
any sobriety tests while on videotape.

 Before trial, appellant sought to suppress both the audio and video portions of the
videotape on the grounds that it revealed him exercising his Fifth Amendment rights and depicted testimonial
responses to custodial interrogation. The trial court ruled that the jury could see the entire videotape but
would not be permitted to hear the audio on the portions of the tape where appellant invoked his
constitutional rights. The following chart graphically depicts the court's proposed audio deletions:




TIME (1)

DESCRIPTION OF ACTIVITY

SOUND


ON/OFF

3:14:14

to


3:14:45 (2)
Officer instructs appellant that he is being videotaped and asks him
to state his name.
ON
3:14:46

to


3:15:36
Officer reads appellant his rights and asks if he understands. 
Appellant invokes his right to remain silent. When asked to
perform a test, appellant replies, "I'm not going to do that."
OFF
3:15:37

to


3:15:49
Officer asks appellant to perform a sobriety test, and he replies,
"I'm not going to do anything."
ON
3:15:50

to


3:16:22
Appellant states that he would like a lawyer but declines to call one
because of the lateness of the hour.
OFF
3:16:23

to


3:17:20
Appellant refuses to perform a sobriety test; officer demonstrates
and then asks, "Think you can do that for me?"
ON
3:17:21

to


3:17:30
Appellant says, "I'm not going to do it because you told me I had a
right to remain silent." Officer says, "All I'm asking you is to
perform some agility tests."
OFF
3:17:31

to


3:20:21
Appellant states that his agility is fine and refuses to perform three
sobriety tests that the officer demonstrates. When asked to do so,
appellant reads the speech test card.
ON
3:20:22

to


3:22:53
Officer asks appellant if he will waive his right to remain silent. 
Officer asks appellant questions about the time he was stopped,
where he is, and how much he had to drink. Appellant refuses
breathalyzer test.
OFF
3:22:54

to


3:29:01
Officer explains the breathalyzer test, the consequences of refusal,
and reads the statutory warning. Appellant refuses again and signs
form stating he refused.
ON



Appellant objected to the trial court's ruling allowing the playing of the audio portion in this manner. After
the trial court overruled his objection, appellant then requested that the videotape be played in its entirety
without editing. The jury heard the entire audio portion and found appellant guilty. He now appeals.

DISCUSSION


 Appellant contends in his first nine points of error that the trial court erred in admitting the
audio portion of the videotape. He contends that the admission of the above evidence violated his
constitutional rights.

 The issues presented on this appeal require a two-step analysis. First, we must examine
the trial court's proposed edited version of the audio track to determine whether it would have violated
appellant's constitutional rights. Second, we must view the unedited videotape as it was offered and
admitted into evidence through the same constitutional prism.

 In summary form, the trial court proposed to allow the jury to consider the following: (1)
appellant's refusal to perform the sobriety tests that were demonstrated by the officer; (2) appellant's
reading, at the officer's request, of a speech test card after he had invoked his right to remain silent; and
(3) appellant's refusal to give a breath specimen after receiving the DWI statutory warning.


Invocation of Constitutional Rights

 Every suspect has a right to remain silent and a right to counsel. See U.S. Const. amend.
V, XIV; Tex. Const. art. I, § 10. In order to make these protections meaningful, a prosecutor may not
make adverse use of a defendant's exercise of his rights. Doyle v. Ohio, 426 U.S. 610, 619 (1976). "It
is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under
police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute
or claimed his privilege in the face of accusation." Miranda v. Arizona, 384 U.S. 436, 468 n.37 (1966). 
To permit the use of this evidence for purposes of incrimination would erode the protection guaranteed by
both the state and federal constitutions. Dumas v. State, 812 S.W.2d 611, 614 (Tex. App.--Dallas
1991, pet. ref'd). The danger lies in the possibility that a jury may adversely or improperly consider such
invocations as an inference of guilt. See Hardie v. State, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991).

 In Dumas v. State, the court recognized the danger to a defendant posed by the jury
hearing his invocation of his rights. During a videotaped interview following a DWI arrest, an officer read
the suspect his Miranda rights and asked the suspect if he wished to waive them; the suspect said "no." 
Dumas, 812 S.W.2d at 614. The State played the tape at trial and allowed the jury to hear the officer read
the defendant his rights and ask him if he wanted to waive them. The State then turned the volume off,
however, so that the jury could not hear the defendant refuse to waive his rights. Id. The court held the
State's deletion of the volume after the officer had read the defendant his rights and requested their waiver
led the jury to the inescapable conclusion that the defendant had refused to waive his rights and had invoked
his Fifth Amendment protections. Id.


Self-Incriminating Testimony

 In addition to the right to remain silent and the right to an attorney, an individual has a
privilege against self-incrimination. See U.S. Const. amend. V, XIV; Tex. Const. art. 1, § 10. However,
this privilege applies only to compelled testimony resulting from custodial interrogation. Pennsylvania v.
Muniz, 496 U.S. 582, 589 (1990). An audio portion of a videotape, therefore, is inadmissible to the extent
it contains compelled testimony in response to custodial interrogation. Miffleton v. State, 777 S.W.2d
76, 81 (Tex. Crim. App. 1989).

 In order to be testimonial, a defendant's response must explicitly or implicitly relate a factual
assertion or disclose information. Muniz, 496 U.S. at 589. Any statement given freely and voluntarily is
admissible regardless of its testimonial nature. See Miranda, 384 U.S. at 478. The right against self-incrimination does not extend to purely physical evidence or evidence of physical characteristics. 
Schmerber v. California, 384 U.S. 757, 764 (1967) (forcibly taking a blood sample permissible);
McCambridge v. State, 712 S.W.2d 499, 507 (Tex. Crim. App. 1986), cert. denied, 495 U.S. 910
(1990) (police may collect a breath sample after suspect invoked his Miranda rights). The right to refuse
such tests is also not protected by the right against self-incrimination. Refusal of a breath or blood test is
admissible when it is not coerced. Thomas v. State, 723 S.W.2d 696, 704 (Tex. Crim. App. 1986);
McCambridge, 712 S.W.2d at 506.

 In Jones v. State, 795 S.W.2d 171 (Tex. Crim. App. 1990), the defendant performed
three of the same tests refused by appellant in the instant case. The court held that such sobriety tests, like
blood or breath tests, are just another means of gathering physical evidence. Jones, 795 S.W. at 176; see
also Miffleton v. State, 777 S.W.2d 76 (Tex. Crim. App. 1989). The video portion of the videotape is
a depiction of the defendant's physical condition at the time of the arrest. Because the interviewing officer
can testify to the defendant's appearance, a videotape is just a preferable means of presenting physical
evidence. Jones, 795 S.W.2d at 176; see also Miffleton, 777 S.W.2d at 80. The audio track provides
a physical exemplar of the suspect's manner of speech at the time of the arrest, the quality of which the jury
may use as evidence of the degree of intoxication. Jones, 795 S.W.2d at 176. In Jones, the court
concluded, "[A]udio tracks from DWI videotapes should not be suppressed unless the police conduct
depicted expressly or impliedly calls for a testimonial response not normally incident to arrest and custody
or is conduct the police know or should know is reasonably likely to elicit such a response." Id. The
same rule holds true for sobriety test refusals. Where a refusal to submit to a sobriety test is not coerced,
the admission of the refusal does not violate the defendant's privilege against self-incrimination. Dawkins
v. State, 822 S.W.2d 668, 671 (Tex. App.--Waco 1991), pet. ref'd, 825 S.W.2d 709 (Tex. Crim. App.
1992).

 A fine line exists between a statement that is physical evidence of "impaired mental faculties"
and a testimonial statement that creates the inference of impairment. A request to perform a verbal sobriety
test requires a testimonial response when it demonstrates that the mind is confused. Muniz, 496 U.S. at
592; Vickers v. State, 878 S.W.2d 329, 330 (Tex. App.--Fort Worth 1994, pet. ref'd). In Muniz, the
court held that a defendant cannot be asked to calculate the date of his sixth birthday because his answer
demonstrates that his mind is confused and is therefore testimonial. Muniz, 496 U.S. at 599-600. The
court rejected an argument that the test only elicited evidence of the physiological functioning of the
appellant's mind. Id. at 593. The court recognized the problem facing an accused asked a question that
requires a testimonial response: "Whenever a suspect is asked for a response requiring him to communicate
an express or implied assertion of belief, the suspect confronts the 'trilemma' of truth, falsity, or silence, and
hence the response (whether based on truth or falsity) contains a testimonial component." Id. at 597. Any
question that requires an accused to communicate an assertion of belief must be scrutinized for a testimonial
component.


Application to the Case at Bar

 In the instant case, the officer demonstrated for appellant four physical agility tests: (1)
standing and tilting his head back; (2) standing on one-leg while counting backward from one thousand
thirty to one thousand; (3) walking heel-toe while reciting the alphabet; and (4) touching the tip of his finger
to his nose. The officer asked appellant to perform each of these tests, and appellant refused. None of
the tests required appellant to communicate an implied assertion of fact or belief. See Muniz, 496 U.S. at
589; Jones, 795 S.W.2d at 176. Although the officer at one time asked defendant to count, the mere act
of counting does not contain a testimonial component. See Muniz, 496 U.S. at 604 n.17; Dawkins, 822
S.W.2d at 672. Similarly, reciting the entire alphabet tests a suspect's long-term memory and cannot lead
to the confusion envisioned in Muniz. See Branch v. State, 932 S.W.2d 577, 581 (Tex. App.--Tyler
1995, no pet.). Although appellant consistently refused the officer's request that he perform the sobriety
tests, his refusals do not contain a testimonial element. "If such sobriety tests do not call for potentially
incriminating, testimonial responses . . . then it follows that a suspect's refusal to submit to the test does not
constitute the type of potentially self-incriminating testimony that would bring constitutional safeguards into
play." Id. at 583; see also Dawkins, 822 S.W.2d at 671. We find that none of the sobriety tests
requested by the officers required a testimonial response. Therefore, this portion of the audio track was
admissible and the trial court did not abuse its discretion in its initial decision to admit the evidence.

 Additionally, we hold that, if the jury had viewed the tape as edited by the trial court, it
would not have heard or been led to conclude that appellant invoked his constitutional rights during the
videotaped sobriety tests. In reaching this conclusion, we hold that the facts of Dumas do not apply to the
instant case. Unlike Dumas, none of the actions on the proposed edited audiotape would have revealed
that the officer advised appellant of his constitutional rights. Furthermore, the proposed edited audio track
did not reveal appellant's repeated invocations of his rights. We find nothing in the trial court's proposed
audio portion that would lead a jury to inescapably conclude that appellant had invoked his constitutional
rights.

 After appellant had invoked his right to remain silent and refused to perform any sobriety
tests, the officer requested that he read a speech test card. Appellant read the card voluntarily. We hold
that appellant's reading of the card did not constitute self-incriminating testimony. The officer did not ask
appellant to communicate any assertion of fact or belief; he only asked him to read the card and provide
a voice sample. See Muniz, 496 U.S. at 589; Jones, 795 S.W.2d at 176. A voice exemplar, as
mentioned above, is an admissible form of physical evidence. Jones, 795 S.W.2d at 175. We also hold
that the reading of the card did not divulge that appellant had invoked his constitutional rights. A jury could
not inescapably conclude from appellant's reading of the speech test card that he had invoked his
constitutional rights. See Dumas, 812 S.W.2d at 614.

 The videotape concluded with the officer reading appellant the DWI statutory warning and
requesting that he give a breath sample. Appellant refused to provide a sample, and the officer read him
the form that explained the consequences of his refusal. Appellant stated that he understood the warning
and signed the form indicating that he refused to give the breath test. A breath test is a means of gathering
physical evidence and is not testimonial. McCambridge, 712 S.W.2d at 507. The reading of the warning
by the officer is attendant to arrest and custody and does not, therefore, call for a testimonial response. See
Jones, 795 S.W.2d at 176. Appellant responded to all the of officer's questions surrounding the breath
test. He first refused the test, then agreed to sign the form after it had been read to him, and finally asked
the officers for a desk upon which to sign the form. Appellant responded to all the officer's requests
voluntarily and even initiated part of the conversation. No aspect of this transaction would lead a jury to
inescapably conclude that appellant had invoked his constitutional rights. We hold that appellant's refusal
of the breath test neither constituted testimony nor revealed that he had invoked his rights.

 Therefore, we conclude that the trial court properly proposed to edit the audio track of the
videotape so as not to violate any of appellant's constitutional rights. Faced with this choice, appellant
permitted the introduction of the entire audio portion of the videotape in evidence and now assails his
conviction as improper because appellant was heard to invoke his right to counsel and right to remain silent. 
Because the trial court's proposed ruling on the edited audio track was correct, appellant cannot now
complain of his acquiescence to the introduction of inadmissible evidence. We hold that by allowing the
jury to hear the entire audio portion of the videotape, appellant waived his right on appeal to complain of
its introduction. Appellant cannot complain of error he invited. See Tucker v. State, 771 S.W.2d 523,
534 (Tex. Crim. App. 1988), cert. denied, 492 U.S. 912 (1989). We overrule appellant's first nine points
of error.


Jury Argument

 In a related point of error, appellant contends that the trial court erred by overruling his
objection to the prosecutor's argument that the jury could consider appellant's refusal to perform the
sobriety tests on the videotape as evidence of guilt. A comment on a defendant's exercise of his right to
remain silent violates his constitutional rights. See Doyle, 426 U.S. at 619; Miranda, 384 U.S. at 468
n.37. However, it is not a violation of a defendant's constitutional rights to perform videotaped sobriety
tests because such tests are nontestimonial. Jones, 795 S.W.2d at 176. Similarly, a defendant's refusal
to perform a videotaped sobriety test is nontestimonial. Branch, 932 S.W.2d at 583. A refusal to submit
to a breath or blood test, therefore, is admissible as evidence of guilt. South Dakota v. Neville, 459 U.S.
553 (1983); Schmerber, 384 U.S. at 764; see also Thomas v. State, 723 S.W.2d 696, 704 (Tex. Crim.
App. 1986). Sobriety test refusals are admissible as well. Dawkins, 822 S.W.2d at 671.

 There are four areas of permissible prosecutorial jury argument: (1) summation of the
evidence presented at trial; (2) reasonable deductions drawn from the evidence; (3) a response to
arguments of opposing counsel; and (4) a plea for law enforcement. Harris v. State, 827 S.W.2d 949,
963 (Tex. Crim. App.), cert. denied, 506 U.S. 942 (1992); Gaddis v. State, 753 S.W.2d 396, 398 (Tex.
Crim. App. 1988). Counsel is given wide latitude for drawing inferences from the evidence, so long as the
inferences drawn are reasonable, fair, legitimate, and offered in good faith. Id. To constitute reversible
error, the jury argument must be extreme or manifestly improper or inject new and harmful evidence. Id.

 In the instant case, appellant complains that the prosecutor's argument constitutes a
comment on appellant's right to refuse to perform the sobriety tests. Appellant states on the proposed
edited audio track that his "agility is fine." Because his refusals to perform the tests were admissible, the
prosecutor was permitted to draw the inference that appellant refused because his agility was impaired. 
See Gaddis, 753 S.W.2d at 399. We hold that the prosecutor's argument was a reasonable deduction
based on admissible evidence. We overrule appellant's tenth point of error.


CONCLUSION Finding no error, we affirm the judgment of the trial court.



 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: May 1, 1997

Do Not Publish

1. All the video times refer to the time indicated by the digital clock in the upper right hand corner
of the video image.
2. [2] The videotape actually begins at 3:13:06, but the trial court proposed not playing the tape until
3:14:14 because at the beginning of the tape appellant was visually depicted in handcuffs.


refused the test, then agreed to sign the form after it had been read to him, and finally asked
the officers for a desk upon which to sign the form. Appellant responded to all the officer's requests
voluntarily and even initiated part of the conversation. No aspect of this transaction would lead a jury to
inescapably conclude that appellant had invoked his constitutional rights. We hold that appellant's refusal
of the breath test neither constituted testimony nor revealed that he had invoked his rights.

 Therefore, we conclude that the trial court properly proposed to edit the audio track of the
videotape so as not to violate any of appellant's constitutional rights. Faced with this choice, appellant
permi